**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
kspelman@jenner.com
Alexander M. Smith (SBN 295187)
asmith@jenner.com
633 West 5th Street Suite 3600
Los Angeles, CA 90071-2054
Telephone: (213) 239-5100
Facsimile:    (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice* pending)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Attorneys for Defendant
Mondelēz Global LLC
(incorrectly sued as Mondelēz International, Inc.)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA COLEMAN, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>MONDELĒZ INTERNATIONAL, INC.,<br><br>       Defendant, | Case No: 2:20-cv-8100-FMO<br><br>The Honorable Fernando M. Olguin<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Hearing Date:  December 3, 2020<br><br>Hearing Time: 10:00 a.m. |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on December 3, 2020, at 10:00 a.m., or as soon thereafter as the Court is available, in the United States Courthouse located at 350 West First Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012, Defendant Mondelēz Global LLC ("MDLZ", incorrectly sued as Mondelēz International, Inc.) will and hereby does move the Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that Plaintiff fails to state a claim upon which relief can be granted, and Federal Rule of Civil Procedure 9(b), on the ground that Plaintiff fails to allege her claims with sufficient particularity.  In the alternative, MDLZ moves to dismiss Plaintiff's claims on behalf of a nationwide class for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), for lack of standing under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

MDLZ's Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Alexander M. Smith, any additional briefing on this subject, and the evidence and arguments that will be presented to the Court at the hearing on this matter.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 21, 2020.


DATED:     October 30, 2020          JENNER & BLOCK LLP


By: _____ /s/ Kate T. Spelman _____
                      Kate T. Spelman

Attorneys for Defendant
Mondelēz Global LLC (incorrectly named as
Mondelēz International, Inc.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    I.    The FDA Permits Functional Slack-Fill in Packaged Foods. ......................... 2

    II.   The Challenged Swedish Fish Packaging ..................................................... 3

    III.  Plaintiff Challenges the Slack-Fill in the Swedish Fish Box. ......................... 5

ARGUMENT ...................................................................................................... 6

    I.    Plaintiff Has Not Plausibly Alleged That the Swedish Fish Packaging
         Contains *Non-Functional* Slack Fill ............................................................... 7

         A.   Common Sense Dictates That Swedish Fish — Due to Their Unique
              Shape and Gummy Consistency — Require Some Slack-Fill. ............. 7

         B.   Plaintiff's Comparisons Between Swedish Fish and Other Candies Do
              Not Establish That the Slack-Fill in Swedish Fish Boxes Is Non-
              Functional .............................................................................................. 10

    II.   Plaintiff Has Not Plausibly Alleged That the Swedish Fish Packaging Is
         Likely to Deceive a Reasonable Consumer. .................................................. 13

    III.  Plaintiff's Common-Law Claims Fail As Well ............................................... 17

    IV.  This Court Should Dismiss Plaintiff's Nationwide Class Claims. ................. 18

         A.   *Bristol-Myers* Precludes the Exercise of Personal Jurisdiction Over
              Non-California Class Members Whose Claims Lack Any Nexus to
              California. .............................................................................................. 18

         B.   The UCL, CLRA, and FAL Do Not Apply Extraterritorially. ............. 21

         C.   Plaintiff Lacks Standing to Assert Common-Law Claims Under the
              Law of the 49 States Where She Did Not Purchase Swedish Fish. ...... 22

    V.   This Court Should Dismiss Any Claims Seeking Restitution or Equitable
         Relief. ............................................................................................................. 24

CONCLUSION ................................................................................................. 25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Adams v. Cole Haan, LLC*,
    No. 20-913, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020)............................................. 24

5

6

*Alce v. Wise Foods, Inc.*,
    No. 17-2402, 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ....................................... 11

7

8

*Andrade-Heymsfield v. Danone US Inc.*,
    No. 19-589, 2019 WL 3817948 (S.D. Cal. Aug. 14, 2019) .................................... 19, 20

9

*Bautista v. CytoSport Inc.*,
    No. 15-9081, 2016 WL 7192109 (S.D.N.Y. Dec. 12, 2016)........................................ 10

10

11

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ..................................................................................... 13

12

13

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017)................................................................... 2, 18, 19, 20

14

15

*Bush v. Mondelēz Int'l, Inc.*,
    No. 16-2460, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016).......................................... 15

16

17

*Bush v. Mondelēz Int'l, Inc.*,
    No. 16-2460, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) .................................. 10, 15

18

19

*Buso v. ACH Food Cos.*,
    445 F. Supp. 3d 1033 (S.D. Cal. 2020)................................................................ 8, 10, 14

20

21

*Carpenter v. PetSmart, Inc.*,
    441 F. Supp. 3d 1028 (S.D. Cal. 2020)................................................................... 20, 23

22

23

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015).......................................................................... 22

24

25

*Corcoran v. CVS Health Corp.*,
    No. 15-3504, 2016 WL 4080124 (N.D. Cal. July 29, 2016)........................................ 24

26

27

*Daniel v. Mondelēz Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ................................................................. *passim*

28

*In re Dicamba Herbicides Litig.*,
   359 F. Supp. 3d 711 (E.D. Mo. 2019) ........................................................ 19

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) .................................................... 23

*Easter v. Am. W. Fin.*,
   381 F.3d 948 (9th Cir. 2004) ..................................................................... 23

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ..................................................................... 14

*Fenerjian v. Nongshim Co.*,
   72 F. Supp. 3d 1058 (N.D. Cal. 2014) ...................................................... 23

*Fermin v. Pfizer, Inc.*,
   215 F. Supp. 209 (E.D.N.Y. 2016) ........................................................... 14

*Figy v. Frito-Lay N. Am., Inc.*,
   67 F. Supp. 3d 1075 (N.D. Cal. 2014) ...................................................... 21

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................ 23, 24

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ....................................................................... 16

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ................................................................................... 23

*Grupo Bimbo, S.A.B. De C.V. v. Snak-King Corp.*,
   No. 13-2147, 2014 WL 12610141 (C.D. Cal. Oct. 2, 2014) ...................... 21

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013) ...................................................... 4

*Hairston v. S. Beach Beverage Co.*,
   No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ..................... 14

*Ham v. Hain Celestial Grp., Inc.*,
   70 F. Supp. 3d 1188 (N.D. Cal. 2014) ...................................................... 17

*Harris v. CVS Pharmacy, Inc.*,
   No. 13-2329, 2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) ....................... 23

*Hawkins v. UGI Corp.*,
    No. 14-8461, 2016 WL 2595990 (C.D. Cal. May 4, 2016)............................................ 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)......................................................................................................... 18

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ...................................................................................... 13

*Izquierdo v. Mondelēz Int'l, Inc.*,
    No. 16-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ......................................... 12

*Jackson v. Gen. Mills, Inc.*,
    No. 18-2634, 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ................................... 8, 11

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ........................................................................... 23

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ......................................................................................... 7

*In re MacBook Keyboard Litig.*,
    No. 18-2813, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)......................................... 24

*Manchouck v. Mondelēz Int'l Inc.*,
    No. 13-2148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013).......................................... 4

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ........................................................................................... 4

*Marilao v. McDonald's Corp.*,
    632 F. Supp. 2d 1008 (S.D. Cal. 2009)......................................................................... 17

*Martinez v. Aero Caribbean*,
    764 F. 3d 1062 (9th Cir. 2014) ..................................................................................... 20

*Martinez-Leander v. Wellnx Life Scis., Inc.*,
    No. 16-8220, 2017 WL 2616918 (C.D. Cal. Mar. 6, 2017) ......................................... 14

*McKinnis v. Kellogg USA*,
    No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)........................................ 17

*Morales v. Unilever U.S., Inc.*,
    No. 13-2213, 2014 WL 1389613 (E.D. Cal. Apr. 9, 2014).......................................... 23

*N. Alaska Salmon Co. v. Pillsbury*,
    174 Cal. 1 (1916) .......................................................................................... 21

*In re Packaged Seafood Prods. Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017).......................................................... 23

*Pilgrim v. Gen. Motors Co.*,
    408 F. Supp. 3d 1160 (C.D. Cal. 2019) ..................................................... 19, 20

*Rafferty v. Denny's, Inc.*,
    No. 18-2409, 2019 WL 2924998 (N.D. Ohio July 8, 2019).......................... 19

*Reider v. Immaculate Baking Co.*,
    No. 18-1085, 2018 WL 6930890 (C.D. Cal. Nov. 8, 2018) ......................... 14

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) .................................................................. 13, 14

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................. 2, 24, 25

*Spratley v. FCA US LLC*,
    No. 17-62, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ........................... 19

*Stuart v. Cadbury Adams USA, LLC*,
    458 F. App'x 689 (9th Cir. 2011) .............................................................. 7, 16

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ............................................................................... 21

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011) .......................................................... 21

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...................................................................... 7

*Viggiano v. Hansen Natural Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................................... 6

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ....................................................................... 24

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ........................................................ 21

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ................................................. 21, 22

**Statutes**

Cal. Civ. Code § 1750 ........................................................................ *passim*

Cal. Bus. & Prof. Code § 12606.2 ........................................................ 6, 8

Cal. Bus. & Prof. Code § 17200 ....................................................... *passim*

Cal. Bus. & Prof. Code § 17500 ....................................................... *passim*

**Other Authorities**

21 C.F.R. § 100.100 ......................................................................... *passim*

CACI No. 1900 ....................................................................................... 17

CACI No. 1903 ....................................................................................... 17

Fed. R. Civ. P. 8 .................................................................................... 10

Fed. R. Civ. P. 9(b) ....................................................................... 7, 8, 10

Fed. R. Civ. P. 12 ................................................................................... 4

*Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957
  (Jan. 6, 1993) ............................................................................ 3, 7, 9, 10

*Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64123
  (Dec. 6, 1993) ............................................................................ 3, 10, 11

# INTRODUCTION

This consumer class action challenges the presence of allegedly "non-functional" slack-fill in boxes of Swedish Fish candy.  This is not the first such lawsuit; indeed, a New York federal court dismissed a virtually identical lawsuit over two years ago.  *See Daniel v. Mondelēz Int'l, Inc.*, 287 F. Supp. 3d 177 (E.D.N.Y. 2018).  There, the court found not only that the plaintiff had failed to allege that the slack-fill in Swedish Fish boxes was non-functional, but that the "accurate, clearly visible representations of net weight, serving size, and number of servings" on the packaging dispelled any alleged deception.  *Id.* at 192.  Plaintiff's claims in this case fare no better.  This Court should dismiss Plaintiff's lawsuit against Mondelēz Global LLC ("MDLZ") for two basic reasons:

First, Plaintiff has not plausibly alleged that the slack-fill in the Swedish Fish boxes is non-functional.  Slack-fill is not inherently misleading; instead, it is an inevitable byproduct of the manufacturing process and often serves a functional purpose.  To that end, the FDA has enumerated six circumstances under which slack-fill is functional and not misleading.  *See generally* 21 C.F.R. § 100.100(a).  And because Plaintiff's claims are premised on the presence of *non*-functional slack fill, it is her burden to establish that the FDA's "safe harbors" do not apply.  Plaintiff has not met, and cannot meet, this burden.

Plaintiff's conclusory allegation that the slack-fill in Swedish Fish serves no functional purpose — and that the FDA's safe harbors do not apply — is implausible and defies common sense.  Given that Swedish Fish are gummy, oblong, fish-shaped candies, it is unrealistic to expect the box to be filled to the brim.  To the contrary, common sense dictates that some amount of slack-fill is necessary to accommodate the way in which the fish-shaped candies "settle" in the box, to prevent the gummy candies from sticking together, and to allow the box to stand upright on a store shelf or a movie theater concession stand.  The amount of slack-fill in other manufacturers' candy boxes has zero bearing on whether the slack-fill in Swedish Fish — an entirely different product — is non-functional.

Second, even assuming for argument's sake that the slack-fill in Swedish Fish boxes *were* non-functional, Plaintiff has not plausibly alleged that the packaging of Swedish Fish

is likely to deceive a reasonable consumer. Each Swedish Fish box expressly discloses not only the net weight of the product, but the precise number of candy fish in each container. And no reasonable consumer would conclude that the box was filled to the brim; to the contrary, any consumer would recognize the presence of slack-fill as soon as he or she picked up the box and felt the candies rustle. Court after court has held that similar disclosures and product features are sufficient to dispel any claim of deception.

Even if this Court declines to dismiss this lawsuit in its entirety, it should nonetheless dismiss Plaintiff's claims on behalf of a putative nationwide class. While Plaintiff purports to represent a nationwide class of Swedish Fish consumers, this Court lacks personal jurisdiction over the claims of class members who purchased Swedish Fish outside of California; there is no nexus between their alleged injuries and the forum state, and MDLZ is not subject to general jurisdiction in California. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017). Plaintiff's nationwide class claims also fail on their merits: California law forbids the extraterritorial application of its consumer fraud statutes, and Plaintiff — who allegedly purchased Swedish Fish at a grocery store in Los Angeles — lacks standing to assert claims on behalf of putative class members in the other 49 states.

Finally, even if this case proceeds, this Court should narrow the scope of the remedies at issue. As the Ninth Circuit has recently made clear, a plaintiff cannot seek restitution — or any equitable remedy — under California's consumer protection statutes absent a showing that she lacks an adequate legal remedy. *See generally Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Because Plaintiff has an adequate damages remedy under the CLRA and the common law, this Court should dismiss her claims for restitution (including her UCL and FAL claims), an injunction, and other equitable relief.

## BACKGROUND

### I.   The FDA Permits Functional Slack-Fill in Packaged Foods.

"Slack-fill" is "the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a). According to the FDA, the presence of "***non***functional slack-fill" renders food packaging "misleading." *Id.* (emphasis

added).  But "in many products, a certain level of slack-fill has a functional purpose (*e.g.*, protecting the product) and, therefore, can be justified even though some consumers may perceive it to be misleading."  *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957, 2960 (Jan. 6, 1993).

In fact, the FDA has enumerated six specific circumstances under which slack-fill serves a functional purpose: (1) "protection of the contents of the package"; (2) the "requirements of the machines used for enclosing the contents in such package": (3) "[u]navoidable product settling during shipping and handling"[1]; (4) the "need for the package to perform a specific function"; (5) the use of a "reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food"; and (6) the manufacturer's "[i]nability to increase level of fill or further reduce the size of the package" for other reasons.  21 C.F.R § 100.100(a)(1)-(6).

In promulgating this regulation, the FDA made clear that it was not establishing a one-size-fits-all rule for how much slack-fill a given product can contain.  *See Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64123, 64135 (Dec. 6, 1993) (agreeing "that no specific numerical value could adequately describe the amount of nonfunctional slack-fill that would be significant" and that "the primary issue is whether slack-fill is functional versus nonfunctional").  Instead, it emphasized that its regulation was intended to "allow enforcement based on the capabilities of individual processing and packaging facilities and on the specific physical properties (*e.g.*, bulk density, uniformity, tendency to settle, and need for protection) of individual products."  58 Fed. Reg. at 2960.

## II.   The Challenged Swedish Fish Packaging.

MDLZ manufactures and distributes Swedish Fish in the United States in a variety of packaging, including the Swedish Fish box at issue in this case.  The candy is packaged

---

[1] In issuing this regulation, the FDA specifically acknowledged that "settling" of contents — especially for products that take up varying amounts of space depending on how they settle — "is a normal, unavoidable process for many types of food."  58 Fed. Reg. at 2961.

in a clear bag, which is then sealed in a cardboard box.  *See* Smith Decl. Ex. 1.  Although the box was designed for display in movie theater concession stands, it is also sold in grocery stores and drugstores throughout the United States.  *See* Smith Decl. ¶ 2; *see also* Compl. ¶ 12 (alleging that Plaintiff purchased the candy at a Ralphs grocery store).  In either case, the design of the box allows the product to stand upright in a display case and ensures visibility at the movie theater concession stand or on store shelves.  *See* Smith Decl. Ex. 1.

The front of each Swedish Fish box discloses both the net weight and the number of servings of candy in the box.[2]  *See id.*  The Nutrition Facts panel on the back of the package states not only the number of servings in each box, but the precise number of candies in each serving — and, by extension, the number of candies in each box.  *See id.*  For example, a 3.1-ounce box of Swedish Fish candy includes three servings of five gummy fish, for a total of fifteen fish in the package:



---

[2] In evaluating a Rule 12 motion, courts are entitled to consider "evidence on which the complaint 'necessarily relies,'" even if the evidence is not physically attached to the complaint.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  For that reason, courts routinely consider images of the packaging at issue when ruling on a motion to dismiss.  *See*, *e.g.*, *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) (holding that "packaging labels for . . . products that the FAC specifically references and quotes" are "appropriate for judicial notice"); *Manchouck v. Mondelēz Int'l Inc.*, No. 13-2148, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013) (similar).



*Id.*  When a consumer opens this package, he or she would discover fifteen gummy fish candy — the precise number the labeling discloses — packaged in a transparent plastic bag.





*Id.*

## III.   **Plaintiff Challenges the Slack-Fill in the Swedish Fish Box.**

Despite the abundant disclosures regarding the amount of candy in each Swedish Fish box, Plaintiff claims that MDLZ "markets the Products in a systematically misleading

manner by representing it as adequately filled when, in fact, it contains an unlawful amount of empty space or 'slack-fill.'" Compl. ¶ 3. Plaintiff alleges that she "understood the size of the box and product label to indicate the amount of candy contained therein was commensurate with the size of the box." *Id.* ¶ 12. Nonetheless, Plaintiff claims that what "she actually receive[d] [was] about 58% less than what is represented by the size of the box." *Id.* ¶ 23. Plaintiff does not dispute that each box of Swedish Fish candy accurately represents the product's weight in ounces and the number of candies therein. She nonetheless alleges that this information does not "allow the reasonable consumer to make any meaningful conclusions about the quantity of candy contained in the Products' boxes that would be different from the reasonable consumer's expectation that the quantity of candy product is commensurate with the size of the box." *Id.* ¶ 27.

Based on these allegations, Plaintiff asserts claims under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* *See* Compl. ¶¶ 64-130. In addition to her statutory claims, Plaintiff also asserts common-law claims for "Restitution Based on Quasi-Contract/Unjust Enrichment," common-law fraud, intentional misrepresentation, and negligent misrepresentation. *Id.* ¶¶ 131-61. Plaintiff purports to assert these claims on behalf of a nationwide class (or, alternatively, a California-only class) of consumers who purchased boxes of Swedish Fish candies since September 3, 2016.[3] *See id.* ¶ 51.

## ARGUMENT

To survive a motion to dismiss, a complaint "must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 883-84 (C.D. Cal. 2013) (quoting *Ashcroft v. Iqbal*,

---

[3] Notably, Plaintiff does not attempt to limit the putative class to consumers who purchased the product in person — even though California law makes clear that slack-fill is not actionable where "[t]he mode of commerce does not allow the consumer to view or handle the physical container or product." Cal. Bus. & Prof. Code § 12606.2(c)(8).

556 U.S. 662, 678 (2009)).  Facts indicating the "mere *possibility* of misconduct" fall short of meeting this plausibility standard.  *Iqbal*, 556 U.S. at 679 (emphasis added).  Rather, Plaintiff must "allege more by way of factual content to 'nudg[e] [her] claim'" of unlawful action "across the line from conceivable to plausible."  *Id.* at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  And in determining whether Plaintiff has stated a plausible claim for relief, this Court must "draw on its judicial experience and *common sense*."  *Id.* at 679 (emphasis added); *see also Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011) (affirming dismissal of false advertising lawsuit that "def[ied] common sense").

Furthermore, Plaintiff's statutory consumer fraud claims, as well as her common-law claims for fraud and misrepresentation, are also subject to Rule 9(b)'s heightened pleading standard.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to state-law claims that "allege a unified course of fraudulent conduct," whether or not fraud is a necessary element of those claims).  Rule 9(b) requires Plaintiff to "state with particularity the circumstances constituting fraud" — or, in other words, to identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011) (alteration in original) (citations and internal quotation marks omitted).

## I.   Plaintiff Has Not Plausibly Alleged That the Swedish Fish Packaging Contains *Non-Functional* Slack Fill.

### A.   Common Sense Dictates That Swedish Fish — Due to Their Unique Shape and Gummy Consistency — Require Some Slack-Fill.

The central premise of Plaintiff's lawsuit is that MDLZ misleads consumers by filling its Swedish Fish boxes with "nonfunctional empty space."  Compl. ¶ 1.  But as the FDA has made clear, "some slack-fill is inevitable."  58 Fed. Reg. at 2961.  For that reason, the FDA has enumerated six specific circumstances (known as the "safe harbor" provisions) under which slack-fill plays a functional role in a product's packaging and is not misleading.

*See* 21 C.F.R. § 100.100 (a)(1)-(6); *see also* Cal. Bus. & Prof. Code § 12606.2(c)(1)-(6) (incorporating the FDA's definition of non-functional slack-fill).   Because only *non-functional* slack-fill is misleading, courts have agreed that "a plaintiff must affirmatively plead in his complaint that the safe harbor provisions do not apply."   *Buso v. ACH Food Cos.*, 445 F. Supp. 3d 1033, 1040 (S.D. Cal. 2020); *see Jackson v. Gen. Mills, Inc.*, No. 18-2634, 2020 WL 5106652, at *3 (S.D. Cal. Aug. 28, 2020) ("[I]napplicability of any of the six 'safe harbor' provisions is an element of the claim, because that is what renders ordinary and permissible slack-fill nonfunctional, and therefore both deceptive and actionable.").

Plaintiff has not come close to alleging that the slack-fill in the Swedish Fish boxes is non-functional, let alone with the particularity required by Rule 9(b).   Although Plaintiff alleges in broad terms that the slack-fill has no functional purpose, common sense — which this Court must apply in ruling on a motion to dismiss (*see Iqbal*, 556 U.S. at 679) — compels the opposite conclusion.   And while Plaintiff tries to plead around the safe harbors prescribed by the FDA, her allegations are implausible and ignore the nature of the product — a gummy, fish-shaped candy.

Protection of the Contents.   The FDA allows slack-fill when necessary to "protect[] . . . the contents of the package." 21 C.F.R. § 100.100(a)(1).   Plaintiff alleges that the slack-fill in the Swedish Fish boxes "does not protect the contents of the package" because it makes it more likely that the contents will "have to bounce around during shipping and handling, making it more likely that the contents will break or sustain damage."   Compl. ¶ 30.   But this allegation ignores the fact that Swedish Fish are not crunchy snacks prone to breaking in transit, but are instead gummy candies that stick to one another — particularly when squished together.   Although there is no risk that a gummy, sugary Swedish Fish candy will "break," there is a significant risk that the candies would stick together and be more difficult to eat if the box were filled to the brim.   Any slack-fill in the package accordingly serves the functional purpose of helping the candies stay separate from one another and retain the integrity of their signature fish shape.

Settling.   The FDA also recognizes that a container may have slack-fill to

accommodate the way in which individual pieces settle in the package.  *See* 21 C.F.R. § 100.100(a)(3).  In distinguishing between functional and non-functional slack-fill, the FDA specifically recognized that "settling" of contents, especially for products that take up varying amounts of space depending on how they settle, "is a normal, unavoidable process for many types of food."  58 Fed. Reg. at 2961.

Plaintiff alleges that, due to "the Products' density, shape, and composition, any settling occurs immediately at the point of filling the box" and that "[n]o additional product settling occurs during subsequent shipping and handling."  Compl. ¶ 33.  But Plaintiff provides no factual basis for her allegation that no further settling occurs after each box is filled.  Indeed, any such allegation defies common sense given that the products travel great distances and change hands several times — from MDLZ to the distributor to the retailer — before they arrive on store shelves.  And even assuming for argument's sake that the candies did not settle further during shipping and handling, they nonetheless take up varying amounts of space in the packaging depending on the way in which the individual candies — which have a distinctive fish shape with a tail and fins — land in the package.  Because the fish-shaped candies are not symmetrical or compact, each package must include a significant amount of slack-fill to accommodate the way in which the fish settle in the box. That is precisely the sort of functional slack-fill the FDA expressly permits.

<u>Requirements of the Machines</u>.   The FDA permits slack-fill as necessary to accommodate the "requirements of the machines used for enclosing the contents in such package."  21 C.F.R. § 100.100(a)(2).  Here, the candies are wrapped in a plastic bag to maintain freshness and prevent tampering before they are mechanically placed into a box, which is then sealed shut with glue on the box flaps.  *See* Smith Decl., Ex. 1.  If the box were filled to the top with candies, the glue used to seal the box would likely seep through the flap and attach to the plastic bag as well.  The slack-fill — which ensures some clearance between the top of the bag and the top of the box — is accordingly necessary to accommodate the mechanical process used to package the candies.

<u>Specific Function</u>.   Finally, the FDA has acknowledged that slack-fill serves a

functional purpose when it accommodates "the need for the package to perform a specific function." 21 C.F.R. § 101.100(a)(4). Here, the slack-fill serves the "specific function" of ensuring that the box — which is frequently sold on store shelves and in the display case of movie theater concession stands — can stand upright with its principal display panel facing outward. If the boxes were completely filled, they would likely bulge outward (depending on how the candies settle in the box), which would prevent the box from standing upright.

In short, Plaintiff has not "allege[d] *facts* to support the conclusion that the slack fill is nonfunctional" and that "the safe harbors do not apply" — which is *her* burden at the pleading stage. *Buso*, 445 F. Supp. 3d at 1041 (emphasis added). Although she alleges in broad terms that the slack fill in each box of Swedish Fish serves no functional purpose, courts have held that similar "conclusory statements" regarding the application of the safe harbor exceptions do not suffice to state a plausible claim. *Bush v. Mondelēz Int'l, Inc.*, No. 16-2460, 2016 WL 7324990, at *4 (N.D. Cal. Dec. 16, 2016); *see also Bautista v. CytoSport Inc.*, No. 15-9081, 2016 WL 7192109, at *4 (S.D.N.Y. Dec. 12, 2016) (rejecting the plaintiff's allegation that the empty space in the packaging "was not used to protect product, necessary for enclosing the product, or because of settling" where he ""provide[d] no facts rendering that conclusion plausible") (internal quotation marks omitted). And if these allegations do not suffice under Rule 8, they certainly do not suffice under Rule 9(b). Absent any specific facts showing that the slack-fill in the Swedish Fish boxes serves no functional purpose, Plaintiff has not stated a plausible claim.

## B. Plaintiff's Comparisons Between Swedish Fish and Other Candies Do Not Establish That the Slack-Fill in Swedish Fish Boxes Is Non-Functional.

Instead of articulating why the slack-fill in Swedish Fish is non-functional given the unique nature of the product, Plaintiff alleges that other varieties of candy (such as Boston Baked Beans) contain less slack-fill. *See generally* Compl. ¶¶ 5-10, 38-44. But these comparisons are beside the point. The FDA has rejected the proposition that a single type of food (such as boxed candy) should be subject to a uniform slack-fill threshold, as "differences in the physical characteristics of a given product . . . result in a high degree of

variability in the level of functional slack-fill within commodity classes."  58 Fed. Reg. at 2959; *see also* 58 Fed. Reg. at 64135 ("[N]o specific numerical value could adequately describe the amount of nonfunctional slack-fill that would be significant.").  And relying on these pronouncements by the FDA, courts around the country have rejected "the proposition that such comparisons are sufficient to allege nonfunctional slack-fill."  *Alce v. Wise Foods, Inc.*, No. 17-2402, 2018 WL 1737750, at *8 (S.D.N.Y. Mar. 27, 2018).

For example, in *Alce*, the plaintiffs alleged that the defendant's potato chips contained non-functional slack-fill.  *See id.* at *7.  They asserted that, by "comparing the bags of Defendant's Products to the bags of Defendant's other snack chip lines and chips of its competitors, it is possible to establish that the Products contain non-functional slack-fill." *Id.* (internal quotation marks omitted).  The court dismissed the plaintiffs' claim, reasoning that the "FDA guidance is inconsistent with this approach."  *Id.* at *8.  Further, even if a plaintiff *could* rely on comparisons with the amount of slack-fill in competing products, the court noted that such a comparison was unavailing, as "even a cursory inspection . . . demonstrates that there are substantial differences between the products."  *Id.*  "Among other things," the court noted that "the proportions and volumes of the comparator bags are different; the products are manufactured by different corporations; the chips have different shapes (rectangular versus round); the surfaces are different (ridges versus flat); and the ingredients are different (corn versus potato)."  *Id.*  In light of these differences, the court held that the plaintiffs' proffered comparisons failed to establish that the slack-fill in the defendant's potato chips was non-functional.

Similarly, in *Jackson*, the plaintiff alleged that the defendant's frosted flake cereal included an excessive amount of slack-fill, and she "attempted to bolster her claim by including images of a different product . . . that includes significantly less slack-fill."  2020 WL 5106652, at *4.  But the court rejected this approach, reasoning that "[t]he two cereals, even if they are similar, are not the same."  *Id.*  Although the plaintiff alleged that "the two cereals are of similar size, shape, and density," the court held that this was beside the point, as "mere similarity does not imply that the two cereals settle to the same extent."  *Id.*  And

the court concluded that this was consistent with the FDA's guidance, which "recognizes that similar products — and even products within the same product line — vary significantly in the amount of slack-fill." *Id.* (citing 58 Fed. Reg. at 64135).

And in *Daniel*, the court specifically rejected the plaintiff's attempt to compare the amount of slack-fill in Swedish Fish boxes with other boxed candies. There, as in this case, the plaintiff attempted to bolster her claim by alleging that "other similarly sized candy boxes contain significantly less slack-fill." 287 F. Supp. 3d at 187. The court rejected this argument, reasoning that the plaintiff "fail[ed] to allege any facts to support [her] assertion that the candies and their packaging share any meaningful similarities to validate the comparisons." *Id.* at 188. And the court held that the plaintiff's proffered comparison was particularly unhelpful, as "[e]ven a cursory inspection of the candy boxes . . . reveals that the candies may not have been enclosed in the same or similar manner." *Id.*

Plaintiff's attempt to compare the amount of slack-fill in other varieties of candy to the amount of slack-fill in Swedish Fish boxes is nothing more than "the saccharine equivalent of comparing apples with oranges." *Izquierdo v. Mondelēz Int'l, Inc.*, No. 16-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (rejecting the plaintiff's attempt to compare Sour Patch Kids to Hot Tamales and Junior Mints). Indeed, Plaintiff's extended comparison between Swedish Fish and Boston Baked Beans only proves this point. Although Plaintiff alleges that "Boston Beans are coated candies of similar size, shape, and density" to Swedish Fish (Compl. ¶ 40), the image she included in her complaint establishes that this is not the case:




*Compare* Compl. ¶ 40 *with* Smith Decl., Ex. 1.  In other words, while small candy-coated peanuts may be able to fit into a rectangular package with minimal empty space, that does not establish that a bag of large, gummy, fish-shaped candies can do the same.

The distinctions do not end there.  For example, the two products are manufactured by two different entities, and Plaintiff does not even *attempt* to compare Ferrara's processes for manufacturing Boston Baked Beans to MDLZ's processes for manufacturing Swedish Fish.  Likewise, the two products are not packaged similarly: Swedish Fish are enclosed in a plastic pouch, while Boston Baked Beans are not.  And while the packaging of Swedish Fish discloses the precise number of candies inside each box (*see* Smith Decl., Ex. 1), there is no indication that the packaging of Boston Baked Beans does so.  The amount of slack-fill in Boston Baked Beans (or any other candy) simply does not support Plaintiff's allegation that the slack-fill in *Swedish Fish* is non-functional.

## II.    Plaintiff Has Not Plausibly Alleged That the Swedish Fish Packaging Is Likely to Deceive a Reasonable Consumer.

Even if Plaintiff had sufficiently alleged that the slack-fill in Swedish Fish was non-functional, she still has not established that it was *deceptive* — as she must to state a claim.

"[C]laims under the California consumer-protection statutes are governed by the 'reasonable consumer' test," under which Plaintiff must "show that members of the public are *likely* to be deceived."[4]  *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (emphasis added).  "This requires more than a mere possibility that [the defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App.

---

[4] Plaintiff may argue that a claim under the UCL's "unlawful" prong does not require her to allege that MDLZ's labeling is likely to deceive a reasonable consumer, so long as she can establish a predicate violation of the FDA's regulations.  But California law makes clear that a bare violation of an FDA regulation is not sufficient to state a claim under the "unlawful" prong absent a plausible allegation that the purported violation affected the plaintiff's purchasing decision (*i.e.*, misled her).  *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1143-44 (2020).  Plaintiff accordingly cannot use a purported violation of the FDA's slack-fill regulations to state a claim absent a plausible allegation of deception.

4th 496, 508 (2003)).  As one California appellate court put it, "the standard is not a least sophisticated consumer," but rather a reasonable one.  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citation omitted).  "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."  *Hairston v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012).

Here, Plaintiff does not (and cannot) identify any specific, affirmative misrepresentation on the Swedish Fish box — for example, by alleging that the 3.1 ounce box does not in fact contain 3.1 ounces of candy, or that the box does not contain three servings of five gummy fish.  Instead, she alleges that "[t]he size of each box leads the reasonable consumer to believe he or she is purchasing a box full of candy product when, in reality, what he or she actually receives is about 58% less than what is represented by the size of the box."  Compl. ¶ 23.  But as the Ninth Circuit has made clear, a plaintiff cannot allege that the packaging misled her as to the product's contents when it contains an "accurate weight label" that "does not contradict other representations or inferences on [the] packaging."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016).

"In accordance with *Ebner*, several district courts have found that where the package itself discloses the actual unit counts, a 'reasonable consumer' could not be misled."  *Buso*, 445 F. Supp. 3d at 1038 (collecting cases).  For example, courts have dismissed lawsuits challenging the presence of slack-fill in baking mixes where the packaging "discloses the product's net weight and the approximate number of servings per container."[5]  Courts have also dismissed lawsuits alleging that pill bottles were underfilled where each bottle accurately stated the number of pills.[6]  And courts have dismissed lawsuits alleging that

---

[5] *See id.* (dismissing claims that cornbread mix boxes were underfilled); *see also Reider v. Immaculate Baking Co.*, No. 18-1085, 2018 WL 6930890, at *2 (C.D. Cal. Nov. 8, 2018) (dismissing lawsuit challenging slack fill in cake mix where "Defendant's packaging . . . list[ed] the number of certain size cakes that can be made from one box of mix").

[6] *See, e.g.*, *Martinez-Leander v. Wellnx Life Scis., Inc.*, No. 16-8220, 2017 WL 2616918, at *8 (C.D. Cal. Mar. 6, 2017) ("Defendants have listed the exact number of pills each bottle

snack food containers were underfilled where "the snack product labels accurately disclose the number of [pieces] included in each container." *Bush*, 2016 WL 7324990, at *1.

Plaintiff attempts to sidestep this rule by arguing that, even if she and other consumers "had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of candy product meaningfully different from their expectation of a quantity of candy product commensurate with the size of the box." Compl. ¶ 24. But "[n]o reasonable consumer expects the overall size of the packaging to reflect precisely the quantity of product contained therein." *Bush v. Mondelēz Int'l, Inc.*, No. 16-2460, 2016 WL 5886886, at *3 (N.D. Cal. Oct. 7, 2016). Indeed, the court in *Daniel* — a carbon copy of this case — rejected this argument in granting MDLZ's motion to dismiss.

In *Daniel*, as here, the plaintiff claimed that the "size of the [Swedish Fish] box misleads purchasers" by making it appear that the box contained more gummy fish than it actually contained. 287 F. Supp. 3d at 181. But the court concluded that this theory of deception was implausible, as "a reasonable consumer takes into consideration factors aside from package size in assessing the amount or quantity of a product." *Id.* at 192.

The court applied this principle to conclude that the disclosures on each Swedish Fish package effectively dispelled any allegedly misleading inferences resulting from the size of the box. In so doing, the court noted that "a reasonable consumer acting reasonably would find accurate, clearly visible representations of net weight, serving size, and number of servings to offset any misrepresentations arising from non-functional slack-fill." *Id.* Because the plaintiff "fail[ed] to allege in the Complaint any reason why a reasonable consumer would not have considered the disclosures on the Product," and did not "challenge the disclosure's accuracy or visibility," the court concluded that she had not

_____

contains on the labels of both the external box and the pill container . . . . [N]o reasonable consumer could have been misled as to how many pills each box or bottle contained."); *Fermin v. Pfizer, Inc.*, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016) (similar).

plausibly alleged that the labeling of Swedish Fish was misleading.  *Id.* at 192-93.

Like the plaintiff in *Daniel*, Plaintiff cannot myopically focus on the size of the package and look past multiple, unambiguous disclosures as to the amount of candy in each package, particularly given that the packaging contains virtually no other information that would distract a consumer's attention away from those statements.   The disclosures establish that the Swedish Fish box is not misleading — certainly not when viewed "as a whole," as California law requires — and therefore defeat Plaintiff's claim of deception. *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995).

Indeed, Plaintiff's theory of deception not only ignores the accurate disclosures on the label of each Swedish Fish box, but also defies common sense — which the Supreme Court has directed courts to apply in weeding out implausible claims.  *Iqbal*, 556 U.S. at 679; *see also Stuart*, 458 F. App'x at 690; *Daniel*, 287 F. Supp. 3d at 193 (emphasizing that a "reasonable consumer does not lack common sense").  Despite Plaintiff's suggestion to the contrary, no reasonable consumer would automatically conclude that a box of candy was filled to the brim.  Instead, when that consumer picked up the box, he or she would feel the plastic bag of gummy candy fish rustling around the package — thereby alerting him or her that there is some empty space inside the box.[7]  He or she would also be able to feel both ends of the thin cardboard box, which would disclose that the box contained more candy at one end than the other.

It is irrelevant that the Swedish Fish box is opaque, as Plaintiff's "inability to visually inspect a [product's] contents does not . . . prevent [her] from determining whether some product remains."  *Hawkins v. UGI Corp.*, No. 14-8461, 2016 WL 2595990, at *3 (C.D.

---

[7] Anticipating this argument, Plaintiff asserts that, "[e]ven if a reasonable consumer were to 'shake' the Products before opening the box, the reasonable consumer would not be able to discern the presence of any nonfunctional slack fill." Compl. ¶ 25.  But this conclusory allegation is directly at odds with the packaging itself, which makes clear that the size of the pouch containing the gummy fish is smaller than the size of the box and has room to move around.  *See* Smith Decl., Ex. 1.  And it is particularly difficult to believe that the box is underfilled by 58%, as Plaintiff alleges, but that it is *also* impossible to hear the plastic pouch moving around in the box or feel the empty space in the box.

Cal. May 4, 2016) (holding that plaintiff could determine whether liquid remained in propane tanks by "audibly sloshing remaining liquid around in the cylinder"). The box's design makes it inevitable that a consumer will hear and feel the empty space inside the box, which means that it cannot mislead consumers into believing that the box is completely full. The box's design, along with its accurate net content and unit count claims, dispels any purported ambiguity as to the content of Swedish Fish and defeats Plaintiff's claims.

## III.   Plaintiff's Common-Law Claims Fail As Well.

In addition to her claims under the UCL, FAL, and CLRA, Plaintiff asserts common-law claims for fraud, intentional misrepresentation, negligent misrepresentation, and "Restitution Based on Quasi-Contract/Unjust Enrichment." *See* Compl. ¶¶ 131-61. These claims fail for the same reasons as her statutory consumer fraud claims.

Misrepresentation Claims. Under California law, a claim for fraud or negligent misrepresentation requires the plaintiff to establish that the defendant misrepresented a material fact and that she reasonably relied on this misrepresentation. *See* CACI No. 1900 (elements of fraud/intentional misrepresentation); CACI No. 1903 (elements of negligent misrepresentation). For this reason, courts have held that a plaintiff cannot state a claim for negligent misrepresentation or common-law fraud absent allegations that the labeling is likely to deceive a reasonable consumer. *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (citations omitted) (noting that the "reasonable consumer" standard "also applies to common law fraud and negligent misrepresentation claims") (citations omitted). Because Plaintiff has not plausibly alleged that the packaging of Swedish Fish includes any misrepresentation, or that it is otherwise likely to deceive a reasonable consumer, she has not stated a common-law misrepresentation claim.

Unjust Enrichment. Plaintiff likewise fails to allege facts to support her claim that MDLZ was "unjustly enriched." Plaintiff claims that MDLZ was unjustly enriched because it generated sales by using packaging that suggests that each box of Swedish Fish contains more candy than it actually contains. *See* Compl. ¶¶ 1, 3. But because Plaintiff has not plausibly alleged that the packaging of Swedish Fish is misleading, she cannot show that

17

MDLZ has been "unjustly enriched" by retaining the monies paid by the putative class to purchase the products. *See, e.g.*, *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1013 (S.D. Cal. 2009) (dismissing claim for unjust enrichment predicated on same allegations as UCL claim because "Plaintiff allege[d] no wrongful conduct" by the defendant); *McKinnis v. Kellogg USA*, No. 07-2611, 2007 WL 4766060, at *6 (C.D. Cal. Sept. 19, 2007) (dismissing unjust enrichment claim where "Plaintiffs . . . failed to state any substantive claim" that the packaging of Froot Loops would mislead a reasonable consumer). This Court should accordingly dismiss Plaintiff's claim for unjust enrichment.

## IV.   This Court Should Dismiss Plaintiff's Nationwide Class Claims.

Even if this Court does not dismiss Plaintiff's claims in their entirety, it should not permit Plaintiff to assert those claims on behalf of a nationwide class. The Supreme Court's decision in *Bristol-Myers* precludes this Court from exercising personal jurisdiction over the claims of class members outside of California, whose claims have no nexus to the forum state. And even if the Court *could* exercise personal jurisdiction over the claims of non-California class members, those claims fail on their merits: California's consumer protection statutes do not apply to conduct that took place outside of California, and Plaintiff lacks standing to assert claims under the common law of the other 49 states.

### A.   *Bristol-Myers* Precludes the Exercise of Personal Jurisdiction Over Non-California Class Members Whose Claims Lack Any Nexus to California.

Even if Plaintiff's theory of deception were plausible (it is not), this Court cannot exercise personal jurisdiction with respect to the claims of putative class members outside of California. Indeed, Plaintiff's complaint contains *no* facts that support personal jurisdiction over MDLZ as to claims arising from purchases outside of California.

The Supreme Court has long held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). The Supreme Court has recently applied that principle to hold that a court cannot exercise

specific personal jurisdiction over the claims of nonresident class members whose injuries did not take place in the forum state.  *See Bristol-Myers*, 137 S. Ct. at 1781.

In *Bristol-Myers*, the plaintiffs — most of whom were not California residents — sued Bristol-Myers Squibb, a non-California corporation, in California state court for alleged injuries arising out of their use of the drug Plavix.  *Id.* at 1778.  The Supreme Court held that the California state courts could not exercise specific personal jurisdiction over the claims of non-resident plaintiffs, as they "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California."  *Id.* at 1781.  In so holding, the Court emphasized that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California — and allegedly sustained the same injuries as did the nonresidents — does not allow the State to assert specific jurisdiction over the nonresidents' claims."  *Id.*  "[W]hat is missing," the Court concluded, "is a connection between the forum and the specific claims at issue."  *Id.*

Like the plaintiffs in *Bristol-Myers,* Plaintiff seeks to assert claims on behalf of class members outside of California against MDLZ — which is not a California resident and is not subject to general jurisdiction in California — based on purchases that took place in other states.   Under similar circumstances, federal courts in California have held that *Bristol-Myers* bars them from exercising personal jurisdiction over the claims of non-resident class members against a non-resident defendant.[8]  *See, e.g.*, *Pilgrim v. Gen. Motors Co.*, 408 F. Supp. 3d 1160, 1167-68 (C.D. Cal. 2019) (holding that "there is no basis for the

---

[8] Many federal courts outside of California have reached the same conclusion.  *See, e.g.*, *Spratley v. FCA US LLC*, No. 17-62, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (applying *Bristol-Myers* to hold that "the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims" when they "have shown no connection between their claims and Chrysler's contacts with New York"); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 723 (E.D. Mo. 2019) (dismissing nationwide class claims and holding that *Bristol-Myers* "applies with equal force in the class action context"); *Rafferty v. Denny's, Inc.*, No. 18-2409, 2019 WL 2924998, at *7 (N.D. Ohio July 8, 2019) (applying *Bristol-Myers* in FLSA action to hold that "exercising personal jurisdiction over Denny's for claims of any out-of-state putative collective member would violate due process").

Court to constitutionally exercise personal jurisdiction over . . . claims against GM that arise entirely from out-of-state activities that have no connection to California" and rejecting the proposition that "*Bristol-Myers* does not apply because this case is a class action"); *Andrade-Heymsfield v. Danone US Inc.*, No. 19-589, 2019 WL 3817948, at *3 (S.D. Cal. Aug. 14, 2019) (dismissing claims of out-of-state class members and "agree[ing] with the line of cases that held *Bristol-Myers* should apply where, as here, non-resident class representatives assert state-law claims against non-resident defendants").

*Carpenter v. PetSmart, Inc.*, is particularly illustrative.  There, as in *Pilgrim* and *Andrade-Heymsfield*, the court rejected the plaintiffs' efforts to assert claims on behalf of a nationwide class and dismissed the claims of class members outside of California for lack of personal jurisdiction.  441 F. Supp. 3d 1028 (S.D. Cal. 2020).  Although the plaintiffs argued that *Bristol-Myers* was limited to the mass tort context, the court "agree[d] . . . that *Bristol-Myers Squibb* applies in the nationwide class action context" and that "a state cannot assert specific personal jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual claims."  *Id.* at 1035.  As the court explained:

> Whether the individuals who made those out of state purchases are named plaintiffs as part of a mass action, named as representatives for out of state class members, or unnamed members of a putative nationwide class of plaintiffs is a distinction without a difference . . . [I]t can hardly be argued that a defendant's due process rights are better served by one in-state plaintiff seeking to represent a nationwide class than by multiple named plaintiffs each seeking to represent a class of other individuals from their particular jurisdiction whose purchases were subject to the same state common law and consumer protection laws.  None of these differences warrant a holding other than that the court lacks personal jurisdiction over the defendant with respect to out of state claims regardless of the composition of the named plaintiffs.

*Id.* at 1037.  In other words, the court concluded, it would "fundamentally alter the existing landscape of personal jurisdiction jurisprudence" if a California district court could exercise "personal jurisdiction over claims where there would not be personal jurisdiction if the claims were brought individually, for no other reason than that those same claims

1     were brought as part of a class action." *Id.*

2        The reasoning of *Pilgrim*, *Andrade-Heymsfield*, and *Carpenter* applies with equal

3     force here. There can be no dispute that MDLZ — which is incorporated in Delaware and

4     headquartered in Illinois and New Jersey — is not subject to general jurisdiction in

5     California. *See generally Martinez v. Aero Caribbean*, 764 F. 3d 1062, 1070 (9th Cir.

6     2014) ("[T]he 'paradigm' fora for general jurisdiction are a corporation's place of

7     incorporation and principal place of business. Only in an 'exceptional case' will general

8     jurisdiction be available anywhere else.") (quoting *Daimler AG v. Bauman*, 571 U.S. 117

9     (2014)). And this Court cannot exercise specific personal jurisdiction over the claims of

10    class members who purchased Swedish Fish outside of California, as there is no connection

11    whatsoever between those purchases and the forum state. Given the absence of any nexus

12    between the injuries of non-resident class members and the state of California, this Court

13    should dismiss their claims for lack of personal jurisdiction.

14       **B.**     **The UCL, CLRA, and FAL Do Not Apply Extraterritorially.**

15        Plaintiff's attempt to assert claims on behalf of a nationwide class fail for a separate

16    reason: California's consumer protection statutes simply do not apply to conduct that took

17    place entirely outside of California. For over a century, California courts have recognized

18    a "presumption" that the Legislature "did not intend to give its statutes any extraterritorial

19    effect." *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916). The California Supreme

20    Court has expressly held that, because "[n]either the language of the UCL nor its legislative

21    history provides any basis for concluding the Legislature intended the UCL to operate

22    extraterritorially," the "presumption against extraterritoriality applies to the UCL in full

23    force."[9] *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *accord Grupo Bimbo,*

24

25    _____

26    [9] California courts have reached the same conclusion with respect to the FAL and the
CLRA. *See, e.g.*, *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918 (C.D. Cal. 2011)

27    ("Courts have recognized that the FAL is limited to application in California."); *Warner v.
Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015) (holding that the FAL does not

28    apply extraterritorially); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1086-87 (N.D.
Cal. 2014) ("[T]he ordinary presumption against extraterritorial application of California

*S.A.B. De C.V. v. Snak-King Corp.*, No. 13-2147, 2014 WL 12610141, at *3 (C.D. Cal. Oct. 2, 2014) ("California law is unequivocal: the UCL has no extraterritorial application and only applies where the alleged wrongful acts occurred within the state of California.").

*Wilson v. Frito-Lay North America, Inc.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013), is illustrative. There, the court rejected the plaintiffs' effort to "expand their case to include a nationwide putative class of consumers" and agreed that "such claims must fail, because Plaintiffs sue only based on California law, and the Supreme Court of California has clarified that . . . the UCL, FAL, and CLRA presumptively do not apply to occurrences outside of California." *Id.* at 1147. Applying this rule, the Court agreed that "Plaintiffs have failed to give a plausible account of how or why a non-California plaintiff could sue under California tort law for purchased made outside the state from a Texan company that, at most, advertises and sells its products in California." *Id.* at 1148. Because "there is no plausible way for a non-California citizen who purchased Defendant's Products outside California to bring these claims," the court dismissed any "California law claims based on activity occurring in other states" with prejudice. *Id.*

That reasoning applies with equal force here. While Plaintiff may be able to invoke California's consumer protection statutes to sue on her own behalf or on behalf of other California consumers, she cannot sue MDLZ, a non-California citizen, on behalf of consumers who reside outside of California, did not purchase Swedish Fish in California, and whose alleged injuries have no nexus to the state of California. This Court should accordingly dismiss her statutory claims on behalf of class members outside of California.

### C.    Plaintiff Lacks Standing to Assert Common-Law Claims Under the Law of the 49 States Where She Did Not Purchase Swedish Fish.

In addition to her statutory consumer fraud claims under California law, Plaintiff also seeks to assert common-law claims for fraud, intentional and negligent misrepresentation, and unjust enrichment on behalf of a nationwide class. Even assuming that the Court does

law applies to UCL, CLRA, and FAL claims . . . .").

1   not dismiss this lawsuit outright (*see supra* at 7-18) or dismiss all claims on behalf of

2   putative class members outside of California for lack of personal jurisdiction (*see supra* at

3   18-21), it should dismiss any common-law claims on behalf of putative class members

4   outside of California for lack of standing.

5          "[S]tanding is claim- and relief-specific, such that a plaintiff must establish Article

6   III standing for each of her claims and for each form of relief sought."  *In re Carrier IQ,*

7   *Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1064-65 (N.D. Cal. 2015) (citation and

8   internal quotation marks omitted); *accord Harris v. CVS Pharmacy, Inc.*, No. 13-2329,

9   2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015).  In a class action, "at least one named

10  plaintiff must have standing with respect to each claim the class representatives seek to

11  bring."  *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).

12  Thus, when "a representative plaintiff is lacking for a particular state, all claims based on

13  *that* state's laws are subject to dismissal."[10]  *In re Flash Memory Antitrust Litig.*, 643 F.

14  Supp. 2d 1133, 1164 (N.D. Cal. 2009) (citing *Ditropan*, 529 F. Supp. 2d at 1106-07).

15         Here, Plaintiff resides in California and alleges that she purchased Swedish Fish

16  candy at a Ralphs store in Los Angeles.  Compl. ¶ 12.  Because Plaintiff does not reside in

17  any other state, and did not purchase Swedish Fish in any other state, she "lack[s] standing

18  to assert claims based on those states' laws."  *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d

19  1058, 1082-83 (N.D. Cal. 2014); *see also Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897,

20  908 (N.D. Cal. 2019) ("Courts in the Ninth Circuit have consistently held that a plaintiff in

21  a putative class action lacks standing to assert claims under the laws of states other than

22

23  _____

24  [10]  The Supreme Court and the Ninth Circuit have both held that district courts may
    "address[] issues of standing before . . . address[ing] . . . issues of class certification."  *Easter*

25  *v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004); *see also Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147, 160 (1982) (holding that courts may dismiss or strike class allegations if the

26  deficiencies are "plain enough from the pleadings").  "Following *Easter*, California district
    courts frequently address the issue of Article III standing at the pleading stage and dismiss

27  claims asserted under the laws of states in which no plaintiff resides or has purchased
    products."  *Carpenter*, 441 F. Supp. 3d at 1039 (collecting cases); *see Morales v. Unilever*

28  *U.S., Inc.*, No. 13-2213, 2014 WL 1389613, at *5 (E.D. Cal. Apr. 9, 2014) (similar).

those where the plaintiff resides or was injured."); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095 (S.D. Cal. 2017) ("The overwhelming majority of courts have held that Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state.").

The fact that Plaintiff does not assert any claims under the consumer protection statutes of other states is irrelevant, as Article III standing requirements apply with equal force to both statutory and common-law claims.  *See Corcoran v. CVS Health Corp.*, No. 15-3504, 2016 WL 4080124, at *3 (N.D. Cal. July 29, 2016) ("Plaintiffs do not have standing to bring the common law claims under the laws of the . . . states to which they have alleged no connection.  The common law claims brought based on the laws of those states are therefore dismissed."); *Flash Memory*, 643 F. Supp. 2d at 1163-64 (dismissing unjust enrichment claims asserted under laws of states in which no named plaintiff resided).  This Court should therefore dismiss Plaintiff's common-law claims on behalf of putative class members outside of California for lack of standing.

## V.    This Court Should Dismiss Any Claims Seeking Restitution or Equitable Relief.

Finally, even if this Court does not dismiss Plaintiff's lawsuit outright, it should nonetheless dismiss her claims for restitution, an injunction, and other equitable relief.[11]  As the Ninth Circuit recently made clear in *Sonner v. Premier Nutrition Corp.*, a plaintiff cannot seek equitable relief without establishing that she lacks an adequate remedy at law — a showing Plaintiff has not even *attempted* to make.

---

[11] At a minimum, this would require the dismissal of Plaintiff's claim for restitution and her claims under the UCL and FAL, which only authorize equitable relief and do not permit recovery damages.  *See generally In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) ("The remedies available in a UCL or FAL action are limited to injunctive relief and restitution.").  It would also require the dismissal of Plaintiff's request for injunctive relief. *See, e.g., In re MacBook Keyboard Litig.*, No. 18-2813, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) ("[U]nder *Sonner*, Plaintiffs are required to allege that they lack an adequate remedy at law in order to seek injunctive relief."); *Adams v. Cole Haan, LLC*,  No. 20-913, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) (noting that *Sonner*'s "broad analysis of the distinction between law and equity" does not "create an exception for injunctions as opposed to other forms of equitable relief").

1    In *Sonner*, the plaintiff initially asserted claims for both restitution and damages, but

2    later abandoned her damages claims in favor of her claims for equitable restitution.  971

3    F.3d at 838.  The district court then dismissed the plaintiff's remaining claims for restitution,

4    holding that she had "failed to establish that she lacked an adequate legal remedy for the

5    same past harm for which she sought equitable restitution."  *Id.*  The Ninth Circuit affirmed.

6    In so holding, the Ninth Circuit agreed that "the traditional principles governing equitable

7    remedies in federal courts, including the requisite inadequacy of legal remedies, apply when

8    a party requests restitution under the UCL and CLRA in a diversity action."  *Id.* at 844.

9    And because the plaintiff had not alleged — let alone demonstrated — that she lacked an

10   adequate legal remedy, the Court held that she could not seek restitution.  *Id.*

11   *Sonner* squarely precludes Plaintiff's demand for restitution and equitable relief.  As

12   the Ninth Circuit made clear, a plaintiff seeking restitution must "*plead* 'the basic requisites

13   of the issuance of equitable relief' including 'the inadequacy of remedies at law.'"  *Id.* at

14   1081 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)) (emphasis added); *see also*

15   *id.* (noting that the plaintiff's "operative complaint does not *allege* that Sonner lacks an

16   adequate legal remedy") (emphasis added).  Here, however, Plaintiff has not even *attempted*

17   to allege that she lacks an adequate remedy at law, as is necessary to obtain restitution or

18   other equitable relief.  Nor *could* Plaintiff allege that she lacks an adequate legal remedy,

19   as her claim under the CLRA — as well as her common-law claims for fraud, intentional

20   misrepresentation, and negligent misrepresentation — permit recovery of damages.  Absent

21   any plausible allegation that these damages remedies are inadequate to compensate Plaintiff

22   for her alleged harm, *Sonner* bars her from seeking restitution or other equitable remedies.

## CONCLUSION

This Court should grant MDLZ's motion to dismiss.

1   DATED:     October 30, 2020      JENNER & BLOCK LLP

2

3                         By:         /s/   Kate T. Spelman

4                                    Kate T. Spelman

5                         Attorneys for Defendant

6                         Mondelēz Global LLC (incorrectly named as

7                         Mondelēz International, Inc.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES