**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
kspelman@jenner.com
Alexander M. Smith (SBN 295187)
asmith@jenner.com
633 West 5th Street Suite 3600
Los Angeles, CA 90071-2054
Telephone: (213) 239-5100
Facsimile:   (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Attorneys for Defendant
Mondelēz Global LLC
(incorrectly sued as Mondelēz International, Inc.)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA COLEMAN, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>      v.<br><br>MONDELĒZ INTERNATIONAL, INC.,<br><br>              Defendant, | Case No: 2:20-cv-8100-FMO<br><br>The Honorable Fernando M. Olguin<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Hearing Date:  February 4, 2021<br><br>Hearing Time: 10:00 a.m. |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on February 4, 2021, at 10:00 a.m., or as soon thereafter as the Court is available, in the United States Courthouse located at 350 West First Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012, Defendant Mondelēz Global LLC ("MDLZ," incorrectly sued as Mondelēz International, Inc.) will and hereby does move the Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that Plaintiff fails to state a claim upon which relief can be granted, and Federal Rule of Civil Procedure 9(b), on the ground that Plaintiff fails to allege her claims with sufficient particularity.

MDLZ's Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Alexander M. Smith and exhibits thereto, any additional briefing on this subject, and the evidence and arguments that will be presented to the Court at the hearing on this matter.

This motion is made following the conferences of counsel pursuant to Local Rule 7-3, which took place via telephone on December 17, 2020 and via videoconference on December 28, 2020.


DATED:     January 4, 2021          JENNER & BLOCK LLP


                              By:  _____/s/ Kate T. Spelman_____
                                            Kate T. Spelman

                              Attorneys for Defendant
                              Mondelēz Global LLC (incorrectly named as
                              Mondelēz International, Inc.)

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

   I.    The FDA Permits Functional Slack-Fill in Packaged Foods. ......................... 3

   II.   The Challenged Swedish Fish Packaging. ...................................................... 4

   III.  Plaintiff Challenges the Slack-Fill in the Swedish Fish Box. ........................ 6

ARGUMENT ......................................................................................................... 7

   I.    Plaintiff Has Not Plausibly Alleged That the Swedish Fish Packaging
        Contains *Non-Functional* Slack-Fill. ................................................................ 8

       A.   Common Sense Dictates That Swedish Fish — Due to Their
           Unique Shape and Gummy Consistency — Require Some
           Slack-Fill. .......................................................................................... 8

       B.   Plaintiff's Comparisons Between Swedish Fish and Other
           Candies Do Not Establish That the Slack-Fill in Swedish Fish
           Boxes Is Non-Functional. ................................................................. 13

   II.   Plaintiff Has Not Plausibly Alleged That the Swedish Fish Packaging
        Is Likely to Deceive a Reasonable Consumer. .............................................. 15

   III.  Plaintiff's Common-Law Claims Fail As Well. .............................................. 20

   IV.  This Court Should Dismiss Any Claims Seeking Restitution or
        Equitable Relief. ............................................................................................ 21

   V.    This Court Should Dismiss Plaintiff's Lawsuit with Prejudice. .................... 25

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Cole Haan, LLC*,
  No. 20-913, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ........................................... 21

*Alamilla v. Hain Celestial Grp., Inc.*,
  30 F. Supp. 3d 943 (N.D. Cal. 2014) ........................................................................... 10

*Alce v. Wise Foods, Inc.*,
  No. 17-2402, 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ....................................... 13

*Bautista v. CytoSport Inc.*,
  223 F. Supp. 3d 382 (S.D.N.Y. 2016) .......................................................................... 12

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ...................................................................................... 15

*Bush v. Mondelēz Int'l, Inc.*,
  No. 16-2460, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) ............................... 17, 18, 19

*Bush v. Mondelēz Int'l, Inc.*,
  No. 16-2460, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) ................................. 12, 17

*Buso v. ACH Food Cos.*,
  445 F. Supp. 3d 1033 (S.D. Cal. 2020) ..........................................................8, 12, 16, 17

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ........................................................................................ 8

*Daniel v. Mondelēz Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) .................................................................. passim

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ................................................................................. 16, 19

*Fermin v. Pfizer Inc.*,
  215 F. Supp. 3d 209 (E.D.N.Y. 2016) ......................................................................... 17

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) .......................................................................................... 18

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   No. 20-769, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) .......................... 22

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013) ............................................. 4

*Hairston v. S. Beach Beverage Co.*,
   No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ...................... 16

*Ham v. Hain Celestial Grp., Inc.*,
   70 F. Supp. 3d 1188 (N.D. Cal. 2014) ............................................. 20

*Hawkins v. UGI Corp.*,
   No. 14-8461, 2016 WL 2595990 (C.D. Cal. May 4, 2016) ...................... 20

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ..................................................... 16

*Huynh v. Quora, Inc.*,
   No. 18-7597, 2020 WL 7495097 (N.D. Cal. Dec. 21, 2020) ...................... 24

*Izquierdo v. Mondelēz Int'l, Inc.*,
   No. 16-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ...................... 14

*Jackson v. Gen. Mills, Inc.*,
   No. 18-2634, 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) .............. 8, 13, 14

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ....................................................... 8

*In re MacBook Keyboard Litig.*,
   No. 18-2813, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .................. 21, 22

*Manchouck v. Mondelēz Int'l Inc.*,
   No. 13-2148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ...................... 4

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ......................................................... 4

*Marilao v. McDonald's Corp.*,
   632 F. Supp. 2d 1008 (S.D. Cal. 2009) ............................................. 21

*Martinez-Leander v. Wellnx Life Scis., Inc.*,
   No. 16-8220, 2017 WL 2616918 (C.D. Cal. Mar. 6, 2017) ...................... 17

*McKinnis v. Kellogg USA*,
  No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)......................................21

*Miller v. Yokohama Tire Corp.*,
  358 F.3d 616 (9th Cir. 2004) .....................................................................................25

*Nissan Motor Co. v. Nissan Computer Corp.*,
  204 F.R.D. 460 (C.D. Cal. 2001)...............................................................................25

*Qualcomm Inc. v. Compal Elecs., Inc.*,
  283 F. Supp. 3d 905 (S.D. Cal. 2017)........................................................................24

*Reider v. Immaculate Baking Co.*,
  No. 18-1085, 2018 WL 6930890 (C.D. Cal. Nov. 8, 2018) ........................................17

*Shaeffer v. Califia Farms, LLC*,
  44 Cal. App. 5th 1125 (2020) ....................................................................................16

*Sholiay v. Fed Nat'l Mortg. Ass'n*,
  No. 13-958, 2013 WL 5569988 (E.D. Cal. Oct. 9, 2013) ...........................................25

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ...............................................................................*passim*

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ...................................................................................25

*Stuart v. Cadbury Adams USA, LLC*,
  458 F. App'x 689 (9th Cir. 2011) .................................................................................7

*United States v. Elias*,
  921 F.2d 870 (9th Cir. 1990) .....................................................................................23

*United States v. Hurtado*,
  No. 09-4206, 2009 WL 10671968 (C.D. Cal. Oct. 7, 2009) .......................................23

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ..........................................................................7

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009) ....................................................................................21

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ...............................................................................18, 19

**Statutes**

Cal. Bus. & Prof. Code § 12606(b)(8)(C)...........................................................12

Cal. Bus. & Prof. Code § 12606.2(c)............................................................6, 8

Consumers Legal Remedies Act,
   Cal. Civ. Code § 1750 ...........................................................6, 20, 22

False Advertising Law,
   Cal. Bus. & Prof. Code § 17500 ...........................................................6, 20, 21

Unfair Competition Law,
   Cal. Bus. & Prof. Code § 17200 ...........................................................6, 20, 21, 22

**Other Authorities**

21 C.F.R. § 100.100(a)...........................................................*passim*

CACI No. 1900 ...........................................................20

CACI No. 1903 ...........................................................20

Fed. R. Civ. P. 8 ...........................................................12

Fed. R. Civ. P. 9(b) ...........................................................8, 9, 12

Fed. R. Civ. P. 12 ...........................................................4

*Misleading Containers; Nonfunctional Slack-Fill,*
   58 Fed. Reg. 2957 (Jan. 6, 1993)...........................................................*passim*

*Misleading Containers; Nonfunctional Slack-Fill,*
   58 Fed. Reg. 64123 (Dec. 6, 1993)...........................................................3, 13, 14

**INTRODUCTION**

In dismissing Plaintiff Elena Coleman's initial complaint against Mondelēz Global LLC ("MDLZ") with leave to amend, this Court directed Plaintiff to "carefully consider" the deficiencies MDLZ identified in its initial motion to dismiss. ECF No. 21 ("Order"), at 2. Plaintiff has not done so. Although her First Amended Complaint ("FAC") includes a handful of new allegations, it does not adequately address the most glaring flaws in her lawsuit: the absence of plausible allegations that the slack-fill in Swedish Fish boxes is non-functional, and the presence of "accurate, clearly visible representations of net weight, serving size, and number of servings" on the product packaging sufficient to dispel any alleged deception. *Daniel v. Mondelēz Int'l, Inc.*, 287 F. Supp. 3d 177, 192 (E.D.N.Y 2018). These defects led to the dismissal of a nearly-identical lawsuit challenging the presence of allegedly "non-functional" slack-fill in Swedish Fish, and they compel dismissal of this lawsuit as well. Specifically, Plaintiff's claims fail for two fundamental reasons:

<u>First</u>, Plaintiff's FAC lacks any well-pleaded allegations that the slack-fill in Swedish Fish is non-functional. Slack-fill is not inherently misleading; instead, it is an inevitable byproduct of the manufacturing process and often serves a functional purpose. To that end, the FDA has enumerated six circumstances under which slack-fill is functional and not misleading. *See generally* 21 C.F.R. § 100.100(a). And because Plaintiff's claims are premised on the presence of *non*-functional slack-fill, it is her burden to establish that the FDA's "safe harbors" do not apply. Plaintiff has not met, and cannot meet, this burden.

Plaintiff's allegation that the slack-fill in Swedish Fish serves no functional purpose — and that the FDA's safe harbors do not apply — is implausible and defies common sense. Given that Swedish Fish are gummy, oblong, fish-shaped candies, it is unrealistic to expect the box to be filled to the brim. To the contrary, common sense dictates that some amount of slack-fill is necessary to accommodate the way in which the fish-shaped candies "settle" in the box, to prevent the gummy candies from sticking together, and to accommodate the requirements of the machines that fill and seal the boxes. Although Plaintiff now asserts that these safe harbors do not apply because the candies are already "packed closely together

in a small bag" (FAC ¶¶ 32, 37), that is patently false — as evidenced by images of the product packaging susceptible to judicial notice.  And while Plaintiff continues to point to "comparator products" as "additional evidence of nonfunctional slack-fill," the amount of slack-fill in other manufacturers' candy boxes has zero bearing on whether the slack-fill in Swedish Fish — an entirely different product — is non-functional.

<u>Second</u>, even assuming for argument's sake that the slack-fill in Swedish Fish boxes *were* non-functional, Plaintiff has not plausibly alleged that the packaging of Swedish Fish is likely to deceive a reasonable consumer.  Each Swedish Fish box expressly discloses not only the net weight of the product, but the precise number of candy fish in each container.  Thus, no reasonable consumer would conclude that the box was filled to the brim; to the contrary, any consumer would recognize the presence of slack-fill as soon as he or she picked up the box and felt the candies rustle.  Court after court has held that similar disclosures and product features are sufficient to dispel any claim of deception.  And aside from a bare-bones, conclusory allegation that "consumers expect package size to accurately represent the amount of the good being purchased" (FAC ¶ 20) — a conclusion that courts have rejected — Plaintiff's FAC does not even *attempt* to cure this defect, which is independently fatal to her theory of deception.

Moreover, to the extent Plaintiff seeks equitable relief as opposed to damages, those claims fail because she has not plausibly alleged that her legal remedies are inadequate.  *See generally Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Here, Plaintiff claims that she did not receive the quantity of Swedish Fish she believed she had paid for.  That alleged injury is quintessentially monetary in nature, and her claims under the CLRA and California's common law authorize her to recover damages to remedy that purported injury.  Accordingly, Plaintiff does not require restitution or an injunction to make her whole, and her claims for equitable relief fail.  Even if Plaintiff were correct that the UCL and FAL have a longer statute of limitations or cover a broader scope of conduct than her claims under the CLRA or California's common law, that does not render her legal remedies inadequate, and it is insufficient to circumvent *Sonner*.

In short, Plaintiff's FAC does virtually nothing to address the fatal defects MDLZ identified in its earlier motion to dismiss.  Because Plaintiff has not stated—and cannot state—a plausible claim, this Court should dismiss Plaintiff's lawsuit with prejudice.

## BACKGROUND

### I.    The FDA Permits Functional Slack-Fill in Packaged Foods.

"Slack-fill" is "the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a).  According to the FDA, the presence of "***non***functional slack-fill" renders food packaging "misleading." *Id.* (emphasis added).  But "in many products, a certain level of slack-fill has a functional purpose (*e.g.*, protecting the product) and, therefore, can be justified even though some consumers may perceive it to be misleading."  *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957, 2960 (Jan. 6, 1993).

In fact, the FDA has enumerated six specific circumstances under which slack-fill serves a functional purpose: (1) "protection of the contents of the package"; (2) the "requirements of the machines used for enclosing the contents in such package"; (3) "[u]navoidable product settling during shipping and handling"[1]; (4) the "need for the package to perform a specific function"; (5) the use of a "reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food"; and (6) the manufacturer's "[i]nability to increase level of fill or further reduce the size of the package" for other reasons.  21 C.F.R § 100.100(a)(1)-(6).

In promulgating this regulation, the FDA made clear that it was not establishing a one-size-fits-all rule for how much slack-fill a given product can contain.  *See Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64123, 64135 (Dec. 6, 1993) (agreeing "that no specific numerical value could adequately describe the amount of nonfunctional

---

[1] In issuing this regulation, the FDA specifically acknowledged that "settling" of contents — especially for products that take up varying amounts of space depending on how they settle — "is a normal, unavoidable process for many types of food."  58 Fed. Reg. at 2961.

slack-fill that would be significant" and that "the primary issue is whether slack-fill is functional versus nonfunctional").  Instead, it emphasized that its regulation was intended to "allow enforcement based on the capabilities of individual processing and packaging facilities and on the specific physical properties (*e.g.*, bulk density, uniformity, tendency to settle, and need for protection) of individual products."  58 Fed. Reg. at 2960.

## II. <u>The Challenged Swedish Fish Packaging.</u>

MDLZ manufactures and distributes Swedish Fish in the United States in a variety of packaging, including the Swedish Fish box at issue in this case.  The candy is packaged in a clear bag, which is then sealed in a cardboard box.  *See* Smith Decl. Ex. 1.

The front of each Swedish Fish box discloses both the net weight and the number of servings of candy in the box.[2]  *See id.*  The Nutrition Facts panel on the back of the package states not only the number of servings in each box, but the precise number of candies in each serving — and, by extension, the number of candies in each box.  *See id.*  For example, a 3.1-ounce box of Swedish Fish candy includes three servings of five gummy fish, for a total of fifteen fish in the package:

---

[2] In evaluating a Rule 12 motion, courts are entitled to consider "evidence on which the complaint 'necessarily relies,'" even if the evidence is not physically attached to the complaint.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  For that reason, courts routinely consider images of the packaging at issue when ruling on a motion to dismiss. *See*, *e.g.*, *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) (holding that "packaging labels for . . . products that the FAC specifically references and quotes" are "appropriate for judicial notice"); *Manchouck v. Mondelēz Int'l Inc.*, No. 13-2148, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013) (similar).



*Id.*  When a consumer opens this package, he or she would discover fifteen gummy fish candy — the precise number the labeling discloses — packaged in a transparent plastic bag.





*Id.*

### III.   Plaintiff Challenges the Slack-Fill in the Swedish Fish Box.

Despite the abundant disclosures regarding the amount of candy in each Swedish Fish box, Plaintiff claims that MDLZ "markets the Products in a systematically misleading manner by representing it as adequately filled when, in fact, it contains an unlawful amount of empty space or 'slack-fill.'" FAC ¶ 3.  In particular, she alleges that the candy in a 15.4 centimeter box of Swedish Fish only reaches 6.5 centimeters high, resulting in a purported underfill of 58%.[3]  *See id.* ¶¶ 1, 23.  Plaintiff does not dispute that each box of Swedish Fish candy accurately represents the product's weight in ounces and the number of candies therein.  She nonetheless alleges that this information does not "allow the reasonable consumer to make any meaningful conclusions about the quantity of candy contained in the Products' boxes that would be different from the reasonable consumer's expectation that the quantity of candy product is commensurate with the size of the box." *Id.* ¶ 27.

Based on these allegations, Plaintiff asserts claims under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.  See* FAC ¶¶ 69-138.  In addition to her statutory claims, Plaintiff also asserts common-law claims for "Restitution Based on Quasi-Contract/Unjust Enrichment," common-law fraud, intentional misrepresentation, and negligent misrepresentation.  *Id.* ¶¶ 139-69.  Plaintiff purports to assert these claims on behalf of a class of California consumers who purchased boxes of Swedish Fish candy since September 3, 2016.  *See* FAC ¶ 56.[4]

After Plaintiff filed this lawsuit on September 3, 2020, MDLZ moved to dismiss her

---

[3] Nowhere in her FAC does Plaintiff identify who conducted these purported measurements or how that person conducted them.  Moreover, the purported "underfill" is not limited to allegedly *non-functional* slack-fill; instead, it appears to include *all* empty space in the box.

[4] Notably, Plaintiff does not attempt to limit the putative class to consumers who purchased the product in person — even though California law makes clear that slack-fill is not actionable where "[t]he mode of commerce does not allow the consumer to view or handle the physical container or product." Cal. Bus. & Prof. Code § 12606.2(c)(8).

initial Complaint.  *See* ECF No. 13.  The Court granted that motion on December 10, 2020, and it directed Plaintiff to "carefully evaluate the issues raised in this Order as well as the contentions set forth in defendant's Motion" before amending her Complaint.  *See* Order at 2.  Following that Order, Plaintiff filed her FAC on December 21, 2020.  *See* ECF No. 22.

Although her FAC narrows the scope of the putative class to include only California residents (as opposed to the nationwide class she purported to represent in her initial Complaint) and includes additional allegations regarding the purported inadequacy of her legal remedies, it asserts essentially the same theory of deception — *i.e.*, that the size of the Swedish Fish box misleads consumers into believing the box is entirely filled with candy.[5] As explained below, that theory is fundamentally implausible, and her amended complaint fares no better than the one this Court previously dismissed.

## ARGUMENT

To survive a motion to dismiss, a complaint "must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 883-84 (C.D. Cal. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Facts indicating the "mere *possibility* of misconduct" fall short of meeting this plausibility standard.  *Iqbal*, 556 U.S. at 679 (emphasis added).  Rather, Plaintiff must "allege more by way of factual content to 'nudg[e]' [her] claim'" of unlawful action "across the line from conceivable to plausible."  *Id.* at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  And in determining whether Plaintiff has stated a plausible claim for relief, this Court must "draw on its judicial experience and *common sense*."  *Id.* at 679 (emphasis added); *see also Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011) (affirming dismissal of false advertising lawsuit that "def[ied] common sense").

Furthermore, Plaintiff's statutory consumer fraud claims, as well as her common-law

---

[5] A comparison of Plaintiff's initial Complaint and her FAC is attached as Exhibit 2 to the Declaration of Alexander M. Smith.

claims for fraud and misrepresentation, are also subject to Rule 9(b)'s heightened pleading standard. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to state-law claims that "allege a unified course of fraudulent conduct," whether or not fraud is a necessary element of those claims). Rule 9(b) requires Plaintiff to "state with particularity the circumstances constituting fraud" — or, in other words, to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011) (alteration in original) (citations and internal quotation marks omitted).

# I.   Plaintiff Has Not Plausibly Alleged That the Swedish Fish Packaging Contains *Non-Functional* Slack-Fill.

## A.   Common Sense Dictates That Swedish Fish — Due to Their Unique Shape and Gummy Consistency — Require Some Slack-Fill.

The central premise of Plaintiff's lawsuit is that MDLZ misleads consumers by filling its Swedish Fish boxes with "nonfunctional empty space." FAC ¶ 1. But as the FDA has made clear, "some slack-fill is inevitable." 58 Fed. Reg. at 2961. For that reason, the FDA has enumerated six specific circumstances (known as the "safe harbor" provisions) under which slack-fill plays a functional role in a product's packaging and is not misleading. *See* 21 C.F.R. § 100.100 (a)(1)-(6); *see also* Cal. Bus. & Prof. Code § 12606.2(c)(1)-(6) (incorporating the FDA's definition of non-functional slack-fill).

Because only *non-functional* slack-fill is misleading, courts have agreed that "a plaintiff must affirmatively plead in his complaint that the safe harbor provisions do not apply." *Buso v. ACH Food Cos.*, 445 F. Supp. 3d 1033, 1040 (S.D. Cal. 2020); *see Jackson v. Gen. Mills, Inc.*, No. 18-2634, 2020 WL 5106652, at *3 (S.D. Cal. Aug. 28, 2020) ("[I]napplicability of any of the six 'safe harbor' provisions is an element of the claim, because that is what renders ordinary and permissible slack-fill nonfunctional, and therefore both deceptive and actionable."). Were it otherwise, a plaintiff could satisfy her pleading burden simply by alleging the existence of slack-fill, undermining the clear intent of the

federal and state regulations.

Plaintiff's FAC does not come close to plausibly alleging that the slack-fill in Swedish Fish boxes is non-functional, let alone with the particularity required by Rule 9(b). Although Plaintiff continues to allege in broad terms that the slack-fill has no functional purpose, common sense — which this Court must apply in ruling on a motion to dismiss (*see Iqbal*, 556 U.S. at 679) — compels the opposite conclusion. And while Plaintiff tries to plead around the safe harbors prescribed by the FDA, her allegations are implausible and ignore the nature of the product — a gummy, fish-shaped candy.

<u>Protection of the Contents</u>. The FDA allows slack-fill when necessary to "protect[] . . . the contents of the package." 21 C.F.R. § 100.100(a)(1). Plaintiff alleges that the slack-fill in the Swedish Fish boxes "does not protect the contents of the package" because it makes it more likely that the contents will "have to bounce around during shipping and handling, making it more likely that the contents will break or sustain damage." FAC ¶ 31. But this allegation ignores the fact that Swedish Fish are not crunchy snacks prone to breaking in transit, but are instead gummy candies that stick to one another — particularly when squished together. Although there is no risk that a gummy, sugary Swedish Fish candy will "break," there is a significant risk that the candies would stick together and be more difficult to eat if the box were filled to the brim. Any slack-fill in the package accordingly serves the functional purpose of helping the candies stay separate from one another and retain the integrity of their signature fish shape.

Anticipating this argument, Plaintiff alleges that "[t]here is no risk that the candies would stick together if Defendant increased the fill level of the boxes," as "[t]he candies are packed closely together in a small bag within the boxes." *Id.* ¶ 32. In other words, because the candies are allegedly "already tightly packed together," Plaintiff suggests that any *further* packing would not compromise their structural integrity. *Id.* But this argument is demonstrably false, as the bag contains a significant amount of empty space:



Smith Decl. Ex. 1; *see generally Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) ("Courts 'need not accept as true allegations contradicting documents that are referenced in the complaint.'") (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)).  And even if Plaintiff were correct that the fish are "already tightly packed together," that would not mean the box could accommodate more fish; to the contrary, common sense would dictate that packing the container *further* would squish the candies together and compromise their structural integrity.

<u>Settling</u>.   The FDA also recognizes that a container may have slack-fill to accommodate the way in which individual pieces settle in the package.  *See* 21 C.F.R. § 100.100(a)(3).  In distinguishing between functional and non-functional slack-fill, the FDA specifically recognized that "settling" of contents, especially for products that take up varying amounts of space depending on how they settle, "is a normal, unavoidable process for many types of food."  58 Fed. Reg. at 2961.

Plaintiff alleges that, due to "the Products' density, shape, and composition, any settling occurs immediately at the point of fill" and that "[n]o measurable product settling occurs during subsequent shipping and handling."  FAC ¶ 35.  But Plaintiff provides no factual basis for her allegation that no further settling occurs after each box is filled.  Indeed, any such allegation defies common sense given that the products travel great distances and change hands several times — from MDLZ to the distributor to the retailer — before they arrive on store shelves.  And even assuming for argument's sake that the candies did not settle further during shipping and handling, they nonetheless take up varying amounts of

space in the packaging depending on the way in which the individual candies — which have a distinctive fish shape with a tail and fins — land in the package. Because the fish-shaped candies are not symmetrical or compact, each package must include a significant amount of slack-fill to accommodate the way in which the fish settle in the box. That is precisely the sort of functional slack-fill the FDA expressly permits.

As with the "protection of the contents" safe harbor, Plaintiff attempts to anticipate MDLZ's argument by alleging: (1) that "[t]he contents of the Products are of a great enough density that any slack-fill present at the point of sale was present at the time of filling the containers and packaging the contents"; and (2) that "[t]he candies are packed closely together in a small bag," such that "there is no likelihood that the candy will undergo settling based on how each individual candy lands in the packages." FAC ¶¶ 36-37. Once again, however, Plaintiff's allegation that the Swedish Fish are "dense[ly]" or "closely" packed together is demonstrably false, as the candies are loosely encased in a plastic bag. *See* Smith Decl., Ex. 1. Indeed, as an image of the bag makes clear, the candies are not uniformly aligned; some are vertical, while others are horizontal. *See id.* That is precisely the sort of product settling that the FDA regulations aim to accommodate.

<u>Requirements of the Machines</u>.   The FDA permits slack-fill as necessary to accommodate the "requirements of the machines used for enclosing the contents in such package." 21 C.F.R. § 100.100(a)(2). Here, the candies are wrapped in a plastic bag to maintain freshness and prevent tampering before they are mechanically placed into a box, which is then sealed shut with glue on the box flaps. *See* Smith Decl., Ex. 1. If the box were filled to the top with candies, the glue used to seal the box would likely seep through the flap and attach to the plastic bag as well. The slack-fill — which ensures some clearance between the top of the bag and the top of the box — is accordingly necessary to accommodate the mechanical process used to package the candies.

In her FAC, Plaintiff alleges that "[t]he machines used to package the Products would not be affected if there was more candy added," that "Defendant can increase the Products' fill level significantly without affecting how the boxes are sealed, and that, "[a]t most, a

simple recalibration of the machines would be required."   FAC ¶¶ 33-34.   But these conclusory, bare-bones allegations do not explain *how* MDLZ's machinery would be able to accommodate the inclusion of more candy in the box.   Plaintiff all but admits this: instead of pointing to any specific *facts* that support these allegations, she simply states that, "[u]pon information and belief, adjusting these machines is rather simple."   *Id.* ¶ 33.   That is not enough.   Indeed, if this threadbare allegation sufficed to establish that a defendant's machinery did not require slack-fill, then the FDA's safe harbor for the "requirements of the machines" would provide no safe harbor at all.[6]

In short, Plaintiff has not "allege[d] *facts* to support the conclusion that the slack-fill is nonfunctional" and that "the safe harbors do not apply" — which is *her* burden at the pleading stage.   *Buso*, 445 F. Supp. 3d at 1041 (emphasis added).   Although she alleges in broad terms that the slack-fill in each box of Swedish Fish serves no functional purpose, courts have held that similar "conclusory statements" regarding the application of the safe harbor exceptions do not suffice to state a plausible claim.   *Bush v. Mondelēz Int'l, Inc.*, No. 16-2460, 2016 WL 7324990, at *4 (N.D. Cal. Dec. 16, 2016); *see also Bautista v. CytoSport Inc.*, 223 F. Supp. 3d 182, 190 (S.D.N.Y. 2016) (rejecting the plaintiff's allegation that the empty space in the packaging "was not used to protect product, necessary for enclosing the product, or because of settling" where he ""provide[d] no facts rendering that conclusion plausible") (internal quotation marks omitted).   And if these allegations do not suffice under Rule 8, they certainly do not suffice under Rule 9(b).   Absent any specific facts showing that the slack-fill in the Swedish Fish boxes serves no functional purpose, Plaintiff *still* has

---

[6] Plaintiff also alleges that MDLZ can circumvent the limitations of its machinery by "disclos[ing] the fill-level on the outside labeling to inform consumers of the amount of candy actually in the box."   FAC ¶ 34.   MDLZ could certainly *insulate* itself from liability by doing so, as California law provides that slack-fill is not actionable if the defendant prints a fill line on its packaging.   *See generally* Cal. Bus. & Prof. Code § 12606(b)(8)(C).   But neither the FDA nor California law *require* MDLZ to print a fill line on its packaging, and there is no authority suggesting that a manufacturer must do so if its machinery otherwise requires the use of slack-fill.

not stated a plausible claim.

**B.    Plaintiff's Comparisons Between Swedish Fish and Other Candies Do Not Establish That the Slack-Fill in Swedish Fish Boxes Is Non-Functional.**

Instead of plausibly articulating why the slack-fill in Swedish Fish is non-functional given the unique nature of the product, Plaintiff alleges that other varieties of candy (such as Boston Baked Beans) contain less slack-fill. *See generally* FAC ¶¶ 5-10, 43-40. But these comparisons are beside the point. The FDA has rejected the proposition that a single type of food (such as boxed candy) should be subject to a uniform slack-fill threshold, as "differences in the physical characteristics of a given product . . . result in a high degree of variability in the level of functional slack-fill within commodity classes." 58 Fed. Reg. at 2959; *see also* 58 Fed. Reg. at 64135 ("[N]o specific numerical value could adequately describe the amount of nonfunctional slack-fill that would be significant."). And relying on these pronouncements by the FDA, courts around the country have rejected "the proposition that such comparisons are sufficient to allege nonfunctional slack-fill." *Alce v. Wise Foods, Inc.*, No. 17-2402, 2018 WL 1737750, at *8 (S.D.N.Y. Mar. 27, 2018).

For example, in *Alce*, the plaintiffs alleged that the defendant's potato chips contained non-functional slack-fill. *See id.* at *7. They asserted that, by "comparing the bags of Defendant's Products to the bags of Defendant's other snack chip lines and chips of its competitors, it is possible to establish that the Products contain non-functional slack-fill." *Id.* (internal quotation marks omitted). The court dismissed the plaintiffs' claim, reasoning that the "FDA guidance is inconsistent with this approach." *Id.* at *8. Further, even if a plaintiff *could* rely on comparisons with the amount of slack-fill in competing products, the court noted that such a comparison was unavailing, as "even a cursory inspection . . . demonstrates that there are substantial differences between the products." *Id.* (noting that the products had different "proportions and volumes," surfaces, ingredients, and manufacturers). In light of these differences, the court held that the plaintiffs' proffered comparisons failed to establish that the slack-fill in the potato chips was non-functional.

Similarly, in *Jackson*, the plaintiff alleged that the defendant's frosted flake cereal

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS & AUTHORITIES

included an excessive amount of slack-fill, and she "attempted to bolster her claim by including images of a different product . . . that includes significantly less slack-fill." 2020 WL 5106652, at *4. But the court rejected this approach, reasoning that "[t]he two cereals, even if they are similar, are not the same." *Id.* Although the plaintiff alleged that "the two cereals are of similar size, shape, and density," the court held that this was beside the point, as "mere similarity does not imply that the two cereals settle to the same extent." *Id.* And the court concluded that this was consistent with the FDA's guidance, which "recognizes that similar products — and even products within the same product line — vary significantly in the amount of slack-fill." *Id.* (citing 58 Fed. Reg. at 64135).

And in *Daniel*, the court specifically rejected the plaintiff's attempt to compare the amount of slack-fill in Swedish Fish boxes with other boxed candies. There, as in this case, the plaintiff attempted to bolster her claim by alleging that "other similarly sized candy boxes contain significantly less slack-fill." 287 F. Supp. 3d at 187. The court rejected this argument, reasoning that the plaintiff "fail[ed] to allege any facts to support [her] assertion that the candies and their packaging share any meaningful similarities to validate the comparisons." *Id.* at 188. And the court held that the plaintiff's proffered comparison was particularly unhelpful, as "[e]ven a cursory inspection of the candy boxes . . . reveals that the candies may not have been enclosed in the same or similar manner." *Id.*

Plaintiff's attempt to compare the amount of slack-fill in other varieties of candy to the amount of slack-fill in Swedish Fish boxes is nothing more than "the saccharine equivalent of comparing apples with oranges." *Izquierdo v. Mondelēz Int'l, Inc.*, No. 16-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (rejecting the plaintiff's attempt to compare Sour Patch Kids to Hot Tamales and Junior Mints). Indeed, Plaintiff's extended comparison between Swedish Fish and Boston Baked Beans only proves this point. Although Plaintiff alleges that "Boston Beans are coated candies of similar size, shape, and density" to Swedish Fish (FAC ¶ 45), the image she included in her FAC proves that this is not the case:



*Compare* FAC ¶ 45 *with* Smith Decl., Ex. 1.  In other words, while small candy-coated peanuts may be able to fit into a rectangular package with minimal empty space, that does not establish that a bag of large, gummy, fish-shaped candies can do the same.[7]  The amount of slack-fill in Boston Baked Beans (or any other candy) simply does not support Plaintiff's allegation that the slack-fill in *Swedish Fish* is non-functional.

## II.     Plaintiff Has Not Plausibly Alleged That the Swedish Fish Packaging Is Likely to Deceive a Reasonable Consumer.

Even if Plaintiff had sufficiently alleged that the slack-fill in Swedish Fish was non-functional, she still has not established that it was *deceptive* — as she must to state a claim.

"[C]laims under the California consumer-protection statutes are governed by the 'reasonable consumer' test," under which Plaintiff must "show that members of the public are *likely* to be deceived."  *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (emphasis added).  "This requires more than a mere possibility that [the defendant's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Id.* (citation and internal quotation marks omitted).  As one

---

[7] The distinctions do not end there.  For example, the two products are manufactured by two different entities, and Plaintiff does not even *attempt* to compare Ferrara's processes for manufacturing Boston Baked Beans to MDLZ's processes for manufacturing Swedish Fish.  Likewise, the two products are not packaged similarly: Swedish Fish are enclosed in a plastic pouch, while Boston Baked Beans are not.  And while the packaging of Swedish Fish discloses the precise number of candies inside each box (*see* Smith Decl., Ex. 1), there is no indication that the packaging of Boston Baked Beans does so.

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS & AUTHORITIES

court put it, "the standard is not a least sophisticated consumer," but rather a reasonable one.  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citation omitted).  "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."[8]  *Hairston v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012).

Here, Plaintiff does not (and cannot) identify any specific, affirmative misrepresentation on the Swedish Fish box — for example, by alleging that the 3.1 ounce box does not in fact contain 3.1 ounces of candy, or that the box does not contain three servings of five gummy fish.  Instead, she alleges that "[t]he size of each box leads the reasonable consumer to believe he or she is purchasing a box full of candy product when, in reality, what he or she actually receives is about 58% less than what is represented by the size of the box."  FAC ¶ 23.  But as the Ninth Circuit has made clear, a plaintiff cannot allege that the packaging misled her as to the product's contents when it contains an "accurate weight label" that "does not contradict other representations or inferences on [the] packaging."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016).

"In accordance with *Ebner*, several district courts have found that where the package itself discloses the actual unit counts, a 'reasonable consumer' could not be misled."  *Buso*, 445 F. Supp. 3d at 1038 (collecting cases).  For example, courts have dismissed lawsuits challenging the presence of slack-fill in baking mixes where the packaging "discloses the

---

[8] Plaintiff may argue that a claim under the UCL's "unlawful" prong does not require her to allege that MDLZ's labeling is likely to deceive a reasonable consumer, so long as she can establish a predicate violation of the FDA's regulations.  But California law makes clear that a bare violation of an FDA regulation is not sufficient to state a claim under the "unlawful" prong absent a plausible allegation that the purported violation affected the plaintiff's purchasing decision (*i.e.*, misled her).  *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1143-44 (2020).  Plaintiff accordingly cannot use a purported violation of the FDA's slack-fill regulations to state a claim absent a plausible allegation of deception.

product's net weight and the approximate number of servings per container."[9]  Courts have also dismissed lawsuits alleging that pill bottles were underfilled where each bottle accurately stated the number of pills.[10]  And courts have dismissed lawsuits alleging that snack food containers were underfilled where "the snack product labels accurately disclose the number of [pieces] included in each container."  *Bush*, 2016 WL 7324990, at *1.

Plaintiff attempts to sidestep this rule by arguing that, even if she and other consumers "had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of candy product meaningfully different from their expectation of a quantity of candy product commensurate with the size of the box."[11]  FAC ¶ 24.  But "[n]o reasonable consumer expects the overall size of the packaging to reflect precisely the quantity of product contained therein."  *Bush v. Mondelēz Int'l, Inc.*, No. 16-2460, 2016 WL 5886886, at *3 (N.D. Cal. Oct. 7, 2016).  Indeed, the court in *Daniel* — a carbon copy of this case — rejected this argument in granting MDLZ's motion to dismiss.

In *Daniel*, as here, the plaintiff claimed that the "size of the [Swedish Fish] box

---

[9] *See id.* (dismissing claims that cornbread mix boxes were underfilled); *see also Reider v. Immaculate Baking Co.*, No. 18-1085, 2018 WL 6930890, at *2 (C.D. Cal. Nov. 8, 2018) (dismissing lawsuit challenging slack-fill in cake mix where "Defendant's packaging . . . list[ed] the number of certain size cakes that can be made from one box of mix").

[10] *See, e.g.*, *Martinez-Leander v. Wellnx Life Scis., Inc.*, No. 16-8220, 2017 WL 2616918, at *8 (C.D. Cal. Mar. 6, 2017) ("Defendants have listed the exact number of pills each bottle contains on the labels of both the external box and the pill container . . . . [N]o reasonable consumer could have been misled as to how many pills each box or bottle contained."); *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016) (similar).

[11] Tellingly, Plaintiff's FAC includes virtually no new factual allegations that bolster this theory.  Her *only* addition is a conclusory, one-sentence allegation that "consumers expect package size to accurately represent the quantity of the good being purchased."  FAC ¶ 20; *see also* Smith Decl., Ex. 2.  But her unsupported speculation about consumer expectations is not a factual allegation at all — let alone one that would render her claims plausible or overcome the accurate net contents disclosure and piece count on the packaging.

misleads purchasers" by making it appear that the box contained more gummy fish than it actually contained.  287 F. Supp. 3d at 181.  But the court concluded that this theory of deception was implausible, as "a reasonable consumer takes into consideration factors aside from package size in assessing the amount or quantity of a product."  *Id.* at 192.

The court applied this principle to conclude that the disclosures on each Swedish Fish package effectively dispelled any allegedly misleading inferences resulting from the size of the box.  In so doing, the court noted that "a reasonable consumer acting reasonably would find accurate, clearly visible representations of net weight, serving size, and number of servings to offset any misrepresentations arising from non-functional slack-fill."  *Id.* Because the plaintiff "fail[ed] to allege in the Complaint any reason why a reasonable consumer would not have considered the disclosures on the Product," and did not "challenge the disclosure's accuracy or visibility," the court concluded that she had not plausibly alleged that the labeling of Swedish Fish was misleading.  *Id.* at 192-93.

Like the plaintiff in *Daniel*, Plaintiff cannot myopically focus on the size of the package and look past multiple, unambiguous disclosures as to the amount of candy in each package, particularly given that the packaging contains virtually no other information that would distract a consumer's attention away from those statements.  The disclosures establish that the Swedish Fish box is not misleading — certainly not when viewed "as a whole," as California law requires — and therefore defeat Plaintiff's claim of deception. *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995).

The fact that some of the relevant disclosures appear in the Nutrition Facts panel on the back of the Swedish Fish package does not change this conclusion.  *Bush* — another slack-fill case brought by Plaintiff's counsel here — is highly instructive on this point. There, the plaintiff relied on *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), to argue that the disclosures on MDLZ's Go-Pak cookie containers did not dispel any alleged deception, as they appeared only on the back of the packaging.  *Bush*, 2016 WL 5886886, at *3.  The court disagreed and dismissed the complaint, explaining its reasoning as follows:

Here, like in *Ebner* and unlike in *Williams*, there is no deceptive act to be dispelled.  The Go-Pak product's weight label and nutrition facts panel do not contradict other representations on or inferences from Mondelēz's packaging.  Aside from the accurate weight label and serving size statement, there are no other words, pictures, or diagrams adorning the packaging, as there were in *Williams*, from which any inference could be drawn or on which any reasonable belief could be based about how much . . . product is included.  In the absence of other indications of snack quantity on the package, it is not plausible that a significant portion of the general consuming public . . . could be misled into thinking the container would be packed to the brim with snack.

*Id.* (citations and internal quotation marks omitted).  Here, as in *Bush*, the labeling includes no affirmative misrepresentations as to the amount of candy each box contains.  The *only* express representation regarding the amount of candy is the concededly accurate statement that each box contains 3 servings of 5 gummy fish, which is not deceptive in any way.

Moreover, Plaintiff's theory of deception not only ignores the accurate disclosures on the label of each Swedish Fish box, but also defies common sense — which the Supreme Court has directed courts to apply in weeding out implausible claims.  *Iqbal*, 556 U.S. at 679; *see also Daniel*, 287 F. Supp. 3d at 193 (emphasizing that a "reasonable consumer does not lack common sense").  Despite Plaintiff's suggestion to the contrary, no reasonable consumer would automatically conclude that a box of candy was filled to the brim.  Instead, when that consumer picked up the box, he or she would feel the plastic bag of gummy candy fish rustling around the package — thereby alerting him or her that there is some empty space inside the box.[12]  He or she would also be able to feel both ends of the thin cardboard box, which would disclose that the box contained more candy at one end than the other.

---

[12] Anticipating this argument, Plaintiff asserts that, "[e]ven if a reasonable consumer were to 'shake' the Products before opening the box, the reasonable consumer would not be able to discern the presence of any nonfunctional slack fill."  FAC ¶ 25.  But this conclusory allegation is directly at odds with the packaging itself, which makes clear that the size of the pouch containing the gummy fish is smaller than the size of the box and has room to move around.  *See* Smith Decl., Ex. 1.  And it is particularly difficult to believe that the box is underfilled by 58%, as Plaintiff alleges, but that it is *also* impossible to hear the plastic pouch moving around in the box or feel the empty space in the box.

It is irrelevant that the Swedish Fish box is opaque, as Plaintiff's "inability to visually inspect a [product's] contents does not . . . prevent [her] from determining whether some product remains." *Hawkins v. UGI Corp.*, No. 14-8461, 2016 WL 2595990, at *3 (C.D. Cal. May 4, 2016) (holding that plaintiff could determine whether liquid remained in propane tanks by "audibly sloshing remaining liquid around in the cylinder"). The box's design makes it inevitable that a consumer will hear and feel the empty space inside the box, which means that it cannot mislead consumers into believing that the box is completely full. The box's design, along with its accurate net content and unit count claims, dispels any purported ambiguity as to the content of Swedish Fish and defeats Plaintiff's claims.

## III.   **Plaintiff's Common-Law Claims Fail As Well.**

In addition to her claims under the UCL, FAL, and CLRA, Plaintiff asserts common-law claims for fraud, intentional misrepresentation, negligent misrepresentation, and "Restitution Based on Quasi-Contract/Unjust Enrichment." *See* FAC ¶¶ 139-69. These claims fail for the same reasons as her statutory consumer fraud claims.

<u>Misrepresentation Claims</u>. Under California law, a claim for fraud or negligent misrepresentation requires the plaintiff to establish that the defendant misrepresented a material fact and that she reasonably relied on this misrepresentation. *See* CACI No. 1900 (elements of fraud/intentional misrepresentation); CACI No. 1903 (elements of negligent misrepresentation). For this reason, courts have held that a plaintiff cannot state a claim for negligent misrepresentation or common-law fraud absent allegations that the labeling is likely to deceive a reasonable consumer. *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (citations omitted) (noting that the "reasonable consumer" standard "also applies to common law fraud and negligent misrepresentation claims") (citations omitted). Because Plaintiff has not plausibly alleged that the packaging of Swedish Fish includes any misrepresentation, or that it is otherwise likely to deceive a reasonable consumer, she has not stated a common-law misrepresentation claim.

<u>Unjust Enrichment</u>. Plaintiff likewise fails to allege facts to support her claim that MDLZ was "unjustly enriched." Plaintiff claims that MDLZ was unjustly enriched because

1   it generated sales by using packaging that suggests that each box of Swedish Fish contains
2   more candy than it actually contains.  *See* FAC ¶¶ 1, 3.  But because Plaintiff has not
3   plausibly alleged that the packaging of Swedish Fish is misleading, she cannot show that
4   MDLZ has been "unjustly enriched" by retaining the monies paid by the putative class to
5   purchase the products.  *See, e.g.*, *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1013
6   (S.D. Cal. 2009) (dismissing claim for unjust enrichment predicated on same allegations as
7   UCL claim because "Plaintiff allege[d] no wrongful conduct" by the defendant); *McKinnis*
8   *v. Kellogg USA*, No. 07-2611, 2007 WL 4766060, at *6 (C.D. Cal. Sept. 19, 2007)
9   (dismissing unjust enrichment claim where "Plaintiffs . . . failed to state any substantive
10   claim" that the packaging of Froot Loops would mislead a reasonable consumer).  This
11   Court should accordingly dismiss Plaintiff's claim for unjust enrichment.

12   **IV.**   **This Court Should Dismiss Any Claims Seeking Restitution or Equitable Relief.**

13           Even if this Court does not dismiss Plaintiff's lawsuit outright, it should nonetheless
14   dismiss her claims for restitution, an injunction, and other equitable relief.[13]  As the Ninth
15   Circuit recently made clear in *Sonner v. Premier Nutrition Corp.*, a plaintiff cannot seek
16   equitable relief without establishing that she lacks an adequate remedy at law.  This Court
17   expressly relied on *Sonner* in dismissing the initial complaint, reasoning that Plaintiff had
18   not articulated why her legal remedies are inadequate.  *See* Order at 2.  While Plaintiff now
19   tries to plead around *Sonner*, her new allegations do not establish that she lacks an adequate
20   remedy at law and accordingly cannot overcome *Sonner*.

21

---

22   [13] At a minimum, this would require the dismissal of Plaintiff's claim for restitution and her
23   claims under the UCL and FAL, which only authorize equitable relief and do not permit
     recovery of damages.  *See generally In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130
24   (2009) ("The remedies available in a UCL or FAL action are limited to injunctive relief and
     restitution.").  It would also require the dismissal of Plaintiff's request for injunctive relief.
25   *See, e.g.*, *In re MacBook Keyboard Litig.*, No. 18-2813, 2020 WL 6047253, at *3 (N.D. Cal.
     Oct. 13, 2020) ("[U]nder *Sonner*, Plaintiffs are required to allege that they lack an adequate
26   remedy at law in order to seek injunctive relief."); *Adams v. Cole Haan, LLC*,  No. 20-913,
27   2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) (noting that *Sonner*'s "broad analysis of
     the distinction between law and equity" does not "create an exception for injunctions as
28   opposed to other forms of equitable relief").

In *Sonner*, the plaintiff initially asserted claims for both restitution and damages, but later abandoned her damages claims in favor of her claims for equitable restitution. 971 F.3d at 838. The district court then dismissed the plaintiff's remaining claims for restitution, holding that she had "failed to establish that she lacked an adequate legal remedy for the same past harm for which she sought equitable restitution." *Id.* The Ninth Circuit affirmed. In so holding, the Ninth Circuit agreed that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 844. And because the plaintiff had not alleged — let alone demonstrated — that she lacked an adequate legal remedy, the Court held that she could not seek restitution. *Id.*

*Sonner* squarely precludes Plaintiff's claims for equitable relief. Like the plaintiff in *Sonner*, Plaintiff alleges that she "lost money" and "paid an unwarranted premium" as a result of MDLZ's allegedly false advertising of Swedish Fish. FAC ¶¶ 96, 104, 112, 122; *see also id.* ¶ 136 (alleging that Plaintiff "lost money" and "paid for candy product she never received"). And like the plaintiff in *Sonner*, Plaintiff asserts a claim under the CLRA, as well as claims for fraud, intentional misrepresentation, and negligent misrepresentation — all of which permit recovery of money damages. Because Plaintiff's claims are premised on the money she allegedly "lost" as a result of MDLZ's conduct, and because she seeks damages as a remedy for that alleged injury, she has an adequate remedy at law.

Courts throughout California have applied this precise reasoning in dismissing claims for restitution and equitable relief. *See, e.g.*, *Gibson v. Jaguar Land Rover N. Am., LLC*, No. 20-769, 2020 WL 5492990, at *3-4 (C.D. Cal. Sept. 9, 2020) (applying *Sonner* to dismiss claims for equitable relief with prejudice where the plaintiffs alleged that they "would have been able to avoid spending money" but for the defendant's alleged misrepresentations); *MacBook Keyboard*, 2020 WL 6047253, at *4 (applying *Sonner* to dismiss claims for equitable relief with prejudice where the plaintiffs alleged that they "overpaid for their allegedly defective laptops and incurred various expenses in their attempts to resolve the deficiencies"). Plaintiff attempts to sidestep this principle in three

basic ways — none of which succeed.

First, Plaintiff alleges that her legal remedies are inadequate because the UCL's four-year statute of limitations is longer, and encompasses more class members, than the three-year statute of limitations applicable to her claims under the FAL, CLRA, and the common law.  *See* FAC ¶ 113(a)(1).  But "an adequate remedy at law is not rendered inadequate merely because the statute of limitations has run."  *United States v. Hurtado*, No. 09-4206, 2009 WL 10671968, at *6 n.8 (C.D. Cal. Oct. 7, 2009) (citing *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990)).  And in any event, this would not render *Plaintiff's* legal remedies inadequate, as she admittedly purchased Swedish Fish in 2019.  *See* FAC ¶ 12.  It is irrelevant that the claims of *other* putative class members might be untimely if the UCL claim were dismissed; because Plaintiff has an adequate legal remedy, she cannot overcome *Sonner* by bootstrapping her claims to the untimely claims of other putative class members.

Second, Plaintiff alleges that her legal remedies are inadequate because the UCL and FAL proscribe a broader range of conduct, and encompass more plaintiffs, than the CLRA or the common law.  *See* FAC ¶¶ 113(a)(2), 121(b)(1).  But the FAC does not articulate how these distinctions render Plaintiff's legal remedies inadequate *in this case*.  For example, it is irrelevant that the CLRA is limited to individuals who purchased goods or services for personal, family, or household purposes, as the putative class — by its own terms — is limited to California residents who purchased Swedish Fish "for personal use." *See id.* ¶ 56.  Likewise, even assuming that the elements of a UCL claim are less stringent than the elements of Plaintiff's other claims (*see id.* ¶ 113(a)(2)), that has no bearing on whether Plaintiff has an adequate legal remedy.  Indeed, it is impossible to square Plaintiff's argument — that the CLRA and the common law cannot furnish an adequate legal remedy because they proscribe a narrower range of conduct than the UCL — with *Sonner*, or the many district court decisions that have rejected claims for equitable relief where the CLRA or the common law provided an adequate damages remedy.  *See Sonner*, 971 F.3d at 844.

Third, Plaintiff alleges that injunctive relief is necessary to prevent future deception and "dispel public misperception about the Products that has resulted from years of

Defendant's unlawful marketing efforts." FAC ¶¶ 113(a)(3), 121(b)(2), 137(c)(1). But in assessing the adequacy of legal remedies, the relevant question is not whether the remedy is sufficient to avert future conduct, but instead whether it is adequate to make the plaintiff whole. *See Qualcomm Inc. v. Compal Elecs., Inc.*, 283 F. Supp. 3d 905, 917 (S.D. Cal. 2017) (holding that the plaintiff had "offered no persuasive rationale why the legal remedies available . . . will not be sufficient to make it whole" and that a plaintiff cannot obtain injunctive relief "merely by pointing out that the Defendants' breaches are ongoing").

*Huynh v. Quora, Inc.*, a recent decision from the Northern District of California, is especially illustrative. There, after his personal information was compromised in a data breach, the plaintiff brought a claim under the UCL, as well as common-law claims for negligence, breach of contract, and breach of confidence. No. 18-7597, 2020 WL 7495097, at *1-2 (N.D. Cal. Dec. 21, 2020). The court held that the plaintiff could not seek injunctive relief, as she "seeks a remedy at law through her negligence claim, which is based on the same alleged conduct as her equitable claim." *Id.* at *19. Although the plaintiff sought an injunction "mandating that Defendant both (1) provide updated information about exactly what was exposed and (2) institute industry-standard practices for protection of its users' data," the court concluded that *Sonner* precluded injunctive relief, as "the potential harm caused by both actions may be remedied by money damages." *Id.*

*Huynh*'s reasoning applies with equal force here. Plaintiff alleges that she and other class members lost money and paid an inflated price based on MDLZ's allegedly misleading representations about the amount of candy present in each box. *See* FAC ¶¶ 12, 96, 104, 112, 122, 136. If Plaintiff were to prevail on that claim (which she will not), the appropriate remedy would be money damages sufficient to compensate her for the money she allegedly "lost," equal to the "premium" she allegedly paid. Given the availability of money damages to remedy that purported injury, there is no reason that Plaintiff requires injunctive relief to compensate her for injuries she (or any class member) allegedly suffered.

In short, Plaintiff claims that she lost money due to MDLZ's conduct, and she seeks money damages sufficient to make her whole for that monetary injury. In light of those

1  allegations, Plaintiff cannot plausibly allege that she lacks an adequate remedy at law, and

2  *Sonner* precludes her from seeking restitution, an injunction, or other equitable remedies.

3  **V.   This Court Should Dismiss Plaintiff's Lawsuit with Prejudice.**

4   Although this Court admonished Plaintiff to consider and account for the arguments

5  MDLZ raised in its initial motion to dismiss (*see* Order at 2), Plaintiff has not come close

6  to curing the defects MDLZ previously identified.   Indeed, aside from a handful of

7  conclusory allegations regarding the non-functionality of the alleged slack-fill (*see supra* §

8  I) and a single, bare-bones allegation regarding consumers' expectations of fill level (*see*

9  *supra* § II), Plaintiff has not even *attempted* to cure the central, substantive defects MDLZ

10  outlined in its motion to dismiss.  If Plaintiff's factual allegations are not currently sufficient

11  to support her claim of deception against MDLZ, there is no reason to permit her to take a

12  *third* bite at the apple.  *See, e.g.*, *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th

13  Cir. 2004) (noting that a district court has "particularly broad" discretion to deny leave to

14  amend when a plaintiff has already amended his complaint) (citation and internal quotation

15  marks omitted); *Sholiay v. Fed Nat'l Mortg. Ass'n*, No. 13-958, 2013 WL 5569988, at *7

16  (E.D. Cal. Oct. 9, 2013) ("Because the court has already permitted plaintiffs to amend their

17  pleadings and it appears that plaintiffs are unable to state a viable claim against defendants,

18  all claims will be dismissed with prejudice . . . .").

19   Furthermore, even if Plaintiff *could* allege additional facts in an amended complaint,

20  she cannot plead around the fact that the Swedish Fish boxes contain accurate net contents

21  disclosures and piece counts that dispel any potential deception.  Nor can she plausibly

22  allege that she lacks an adequate legal remedy, as she can — and does — seek damages to

23  compensate her for the money she allegedly lost.  Accordingly, any further amendment

24  would be an "exercise in futility," and this Court should dismiss her lawsuit with prejudice.

25  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *see also Nissan Motor*

26  *Co. v. Nissan Computer Corp.,* 204 F.R.D. 460, 463 (C.D. Cal. 2001) (similar).

27  **CONCLUSION**

28  This Court should grant MDLZ's motion to dismiss with prejudice.

1 | DATED:        January 4, 2021              JENNER & BLOCK LLP

2

3                                            By:  _____/s/___Kate T. Spelman_____

4                                                     Kate T. Spelman

5                                            Attorneys for Defendant
                                             Mondelēz Global LLC (incorrectly named as
6                                            Mondelēz International, Inc.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS & AUTHORITIES