**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELENA COLEMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONDELEZ INTERNATIONAL INC.,<br><br>Defendant. | Case No. CV 20-8100 FMO (AFMx)<br><br>**ORDER** |

Having reviewed and considered all the briefing filed with respect to Mondelez Global LLC's[1] ("defendant") Motion to Dismiss [ ] (Dkt. 25, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff Elena Coleman ("plaintiff") brings this putative class action alleging that defendant sells its Swedish Fish candy (the "Product") in opaque, oversized boxes that contain 58% slack-fill. (See Dkt. 22, First Amended Class Action Complaint ("FAC") at ¶¶ 1, 23, 25). Plaintiff purchased the Product at a supermarket in Los Angeles in 2019. (See id. at ¶ 12). In making her purchase, plaintiff "relied upon the opaque packaging, including the size of the box . . . [which was] designed to encourage consumers like Plaintiff to purchase the Products." (See id.). According to plaintiff, she "understood the size of the box and product label to indicate the amount of candy contained

[1] Incorrectly sued as Mondelez International, Inc.

therein was commensurate with the size of the box," but the box and label were false and misleading given the under-filled Product. (See id.). Plaintiff alleges that she "would not have purchased the Products had she known that the Products contained slack-fill that serves no functional or lawful purpose."[2] (Id. at ¶ 29).

Plaintiff alleges that defendant falsely represents the quantity of candy in each of the Products' opaque boxes through its packaging because the "size of each box leads the reasonable consumer to believe he or she is purchasing a box full of candy product when, in reality, what he or she actually receives is about 58% less than what is represented by the size of the box." (Dkt. 22, FAC at ¶ 23). According to plaintiff, defendant's use of opaque packaging "does not allow for a visual or audial confirmation of the contents of the Products." (Id. at ¶ 25). Also, the other information provided on the front and back labels of the Product does not enable a reasonable consumer to form any meaningful understanding about how to gauge the quantity of the contents as compared to the size of the packaging itself. (See id. at ¶ 26).

Plaintiff asserts claims for violations of California's (1) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (2) False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; and (3) Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq. (See Dkt. 22, FAC at ¶¶ 69-138). Plaintiff also asserts common-law claims for (1) unjust enrichment; (2) common-law fraud; (3) intentional misrepresentation; and (4) negligent misrepresentation. (Id. at ¶¶ 139-69).

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007) ("Twombly"); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) ("Iqbal"); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

[2] The products at issue include "all flavors, varieties, and sizes of Swedish Fish sold in opaque containers[.]" (Dkt. 22, FAC at ¶ 1).

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 550 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 267, 114 S.Ct. 807, 810 (1994) (plurality opinion), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

Moreover, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that those allegations be pled with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so

that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. Cal., 236 F.3d 1014, 1019 (9th Cir. 2001) (internal citations and quotation marks omitted). The complaint must set out the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citation and quotation marks omitted). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." Id.. (internal citation and quotation marks omitted). "It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." Id. at 1103.

## DISCUSSION

Defendant seeks to dismiss plaintiff's FAC on the grounds that plaintiff: (1) has not plausibly alleged the slack-fill in defendant's Product is nonfunctional; (2) has not plausibly alleged that the Product's packaging is likely to deceive a reasonable consumer; and (3) cannot maintain claims seeking restitution or equitable relief without establishing that she lacks an adequate remedy at law. (See Dkt. 25, Motion at 8-24).

### I. WHETHER PLAINTIFF HAS SUFFICIENTLY ALLEGED NONFUNCTIONAL SLACK-FILL.

Under 21 C.F.R. § 100.100(a), "[s]lack fill is the difference between the actual capacity of a container and the volume of product contained therein." "Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than: (1) protection of contents; (2) the requirements of the machines used for enclosing the package; (3) unavoidable product settling; (4) the need for the package to perform a specific function; (5) the fact that the product consists of a food packaged in a reusable container where the container is part of the presentation and has value; or (6) inability to increase level of fill or to further reduce the size of

the package."[3] Escobar v. Just Born Inc., 2017 WL 5125740, *7 (C.D. Cal. 2017) (citing 21 C.F.R. § 100.100(a)) (enumerating the "safe harbor" provisions) (internal quotation marks omitted). "A package containing nonfunctional slack-fill is misleading if consumers are unable to fully view the contents." Id.

Defendant challenges the sufficiency of plaintiff's allegations as to three of the slack-fill safe harbor categories: (1) protection of the contents; (2) settling; and (3) requirements of the machines.[4] (See Dkt. 25, Motion at 9-12). While district courts have disagreed whether "a plaintiff must affirmatively plead in [her] complaint that the safe harbor provisions do not apply" when bringing California consumer fraud claims, Matic v. U.S. Nutrition, 2019 WL 3084335, *6 (C.D. Cal. 2019) (collecting cases), the court need not resolve that issue because plaintiff's allegations are adequately pled.

Here, plaintiff's claims are premised on defendant's alleged misrepresentation of the amount of candy through the use of opaque, oversized boxes which "contain nonfunctional, unlawful slack-fill" in violation of 21 C.F.R. § 100.100. (Dkt. 22, FAC at ¶ 16); (see id. at ¶¶ 1, 22-25, 29-42). Plaintiff provides numerous allegations regarding the inapplicability of the safe harbor provisions to defendant's Product. For example, plaintiff alleges that the "slack-fill . . . does not protect the contents of the package[ because] the greater the amount of slack-fill, the more room the contents have to bounce around during shipping and handling, making it more likely that the contents will break or sustain damage." (Id. at ¶ 31). Plaintiff adds that the slack-fill is "not a result of the candy product settling during shipping and handling" because "any settling occurs

---

[3] "California Business and Professions Code § 12606.2 incorporates 21 C.F.R. § 100.100 and generally prohibits the creation, formation or filling of food containers as to be misleading." Gordon v. Tootsie Roll Indus., Inc., 2017 WL 8292777, *4 (C.D. Cal. 2017). Plaintiff's claims similarly allege a violation of California Business and Professions Code § 12606.2. (See, e.g., Dkt. 22, FAC at ¶ 106).

[4] Defendant's arguments as to why the slack-fill in its Product falls within the safe harbor provisions, (see Dkt. 25, Motion at 8-12), are fact-based and more appropriate at a later stage of the litigation. See, e.g., In re Zappos.com, Inc., 888 F.3d 1020, 1028 (9th Cir. 2018) ("[Defendant] argues that this allegation is implausible, but it does so by relying on facts outside the Complaint[] . . . which makes its argument one that may be appropriate for summary judgment but not . . . at the motion to dismiss stage.").

immediately at the point of fill." (Id. at ¶ 35). Moreover, the "candies are packed closely together in a small bag" such that "there is no likelihood that the candy will undergo settling based on how each individual candy lands in the packages." (Id. at ¶ 37). Finally, plaintiff alleges that the machines used by defendant to package its Product can be recalibrated to accommodate the addition of more candy and that the fill level can be increased "without affecting how the boxes are sealed" because the packaging is only filled to 42% capacity. (See id. at ¶¶ 33-34).

These "affirmative allegations are enough to plausibly allege that the [challenged] safe harbor provisions" do not apply.[5] See Matic, 2019 WL 3084335, at *6; see, e.g., Escobar, 2017 WL 5125740, at *12 (finding similar allegations sufficient to adequately plead nonfunctional slack-fill in support of UCL, FAL, and CLRA claims); Padilla v. Whitewave Foods Company, 2019 WL 4640399, *13 (C.D. Cal. 2019) ("The allegations of the FAC as to nonfunctionality are not detailed. However, they are sufficient to state the basis for a plausible claim for relief."). To the extent defendant challenges the adequacy of these allegations under Fed. R. Civ. P. 9(b), plaintiff has met the "relatively straightforward test" for deceptive product packaging claims. (See Dkt. 22, FAC at ¶¶ 16, 20-42, 56); see, e.g., Matic, 2019 WL 3084335, at *7 ("The 'who' is the defendant; the 'what' is the allegedly misleading packaging; the 'when' is the proposed class period during which the packaging was deceptive; the 'where' is the packaging containing the allegedly misleading statement – or in the case of deceptive packaging, the packaging itself – and the 'how' is the plaintiff's explanation for why the packaging is misleading.").

II. WHETHER PLAINTIFF HAS SUFFICIENTLY ALLEGED A LIKELIHOOD TO DECEIVE.

Defendant contends that plaintiff has failed to plausibly allege that defendant's Swedish Fish packaging is likely to deceive a reasonable consumer. (See Dkt. 25, Motion at 15-20). At

---

[5] Plaintiff offers a comparison between the packaging of defendant's Swedish Fish and Boston Baked Beans which are "sold in identical packaging[.]" (See Dkt. 22, FAC at ¶¶ 43-48); (Dkt. 25, Motion at 13-15). However, contrary to plaintiff's assertion that "Boston Beans are coated candies of similar size, shape, and density of that of [Swedish Fish]" (Dkt. 22, FAC at ¶ 45), a cursory review of the photographs of the two products reveals that they are different. Boston Beans are small, candy-coated peanuts, (see id. at ¶¶ 43, 45) (Photos), while Swedish Fish are gummy, fish-shaped candies. (See id. at ¶ 1) (Photo). As such, this comparison does not factor into the court's reasoning here.

bottom, defendant is challenging plaintiff's theory of deception that "Defendant falsely represents the quantity of candy in each of the Products' opaque boxes through its packaging" because the "size of each box leads the reasonable consumer to believe he or she is purchasing a box full of candy product when, in reality, what he or she actually receives is about 58% less than what is represented by the size of the box." (Dkt. 22, FAC at ¶ 23).

Claims under the UCL, FAL, and CLRA are all "governed by the 'reasonable consumer' test." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [plaintiff] must show that members of the public are likely to be deceived." Id. (internal quotation marks omitted). This standard requires "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Becerra v. Dr Pepper/Seven Up, Inc., 945 F.3d 1225, 1228-29 (9th Cir. 2019) (internal quotation marks omitted). However, California courts "have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision" at the pleading stage. Williams, 552 F.3d at 939 (explaining that it is a "rare situation in which granting a motion to dismiss is appropriate" for these types of claims); Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal.App.4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on [a motion to dismiss].") (internal quotation marks omitted).

Here, defendant argues that plaintiff failed to "identify any specific, affirmative misrepresentation on the Swedish Fish box" because the box discloses the total net weight and the number of servings of candy contained in the Product. (Dkt. 25, Motion at 16); (see id. at 16-17). Relying on Ebner v. Fresh, Inc., 838 F.3d 958 (9th Cir. 2016), defendant contends that "plaintiff cannot allege that the packaging misled her as to the product's contents when it contains an accurate weight label that does not contradict other representations or inferences on the packaging." (Dkt. 25, Motion at 16) (internal quotation and alteration marks omitted). Defendant's contentions are unpersuasive.

Ebner did not involve slack-fill, but instead dealt with allegations that a lip balm product was

deceptive because, despite an accurate net weight label, "only 75% of [the] product [was] reasonably accessible." 838 F.3d at 963. The Ninth Circuit found such claims of deception implausible because the lip balm's "[d]ispenser tubes [ ] use[d] a screw mechanism to push up a solid bullet of lip product" which was commonplace in the market. Id. at 965 (footnote omitted). The court explained that a "reasonable consumer understands the general mechanics of these dispenser tubes and further understands that some product may be left in the tube to anchor the bullet in place." Id. Thus, in Ebner, "the consumer's knowledge that some additional product [was] below the tube's opening [was] sufficient to dispel any deception[.]" Id. at 965-66. The instant action, however, "does not involve allegations similar to the 'general mechanics' of the dispenser in Ebner" and is therefore "not an action in which the Court can determine as a matter of law that the reasonable consumer would expect a material disparity" between the size of the Product's container and the amount of candy within. See Padilla, 2019 WL 4640399, at *12 (distinguishing Ebner in a slack-fill case).

Defendant also relies heavily on Daniel v. Mondelez Int'l, Inc., 287 F.Supp.3d 177 (E.D.N.Y. 2018), which it insists is "a carbon copy of this case[,]" (Dkt. 25, Motion at 17), and argues that plaintiff cannot plead deception where the net weight and number of servings were disclosed. (See id. at 17-18). However, this out-of-circuit case is readily distinguishable. In Daniel, the plaintiff conceded that the "package size [was] but a factor" and asserted that the labeling and advertising were also deceptive. 287 F.Supp.3d at 192. Based on this, the Daniel court found that, "absent exceptional circumstances, a reasonable consumer acting reasonably would find accurate, clearly visible representations of net weight, serving size, and number of servings to offset any misrepresentations arising from non-functional slack-fill." Id. In contrast, plaintiff here "relies [almost] entirely on the size of the boxes for her claims" and alleges 58% slack-fill, "a rather substantial amount by any measure."[6] Stemm v. Tootsie Roll Indus., Inc., 374 F.Supp.3d 734, 741

---

[6] To the extent defendant argues "no reasonable consumer would automatically conclude that a box of candy was filled to the brim" because a consumer would "feel the plastic bag of gummy candy fish rustling around the package[,]" (see Dkt. 25, Motion at 19-20), defendant ignores plaintiff's allegations – not to mention, common sense – explaining that, even if allowed an opportunity to shake the Product, "the reasonable consumer would not be able to discern the

(N.D. Ill. 2019) (distinguishing Daniel where deception claims were based solely on the size of packaging and allegations of 44% slack-fill); (see Dkt. 22, FAC at ¶ 23) (alleging a reasonable consumer is misled by the "size of each box" because "what he or she actually receives is about 58% less than what is represented by the size of the box").[7]

In short, accepting the allegations as true and construing them in the light most favorable to plaintiff, Berg, 412 F.3d at 1125, the court "finds it at least plausible that a consumer could be deceived by a package filled with [58%] air, regardless of whether the number of [Swedish Fish] in the package is displayed on the ingredient list." Cordes v. Boulder Brands USA, Inc., 2018 WL 6714323, *7 (C.D. Cal. 2018) (allegations of deceptive opaque packaging were sufficient to survive a motion to dismiss even where net weight and quantity of pretzels were accurately and prominently disclosed); see, e.g., Padilla, 2019 WL 4640399, at *11 (finding "it . . . plausible that [a] disproportionate container size would mislead reasonable consumers into being willing to pay a greater amount for a product than if the container was smaller in size, i.e., more in conformance with the amount of its contents"); Stemm, 374 F.Supp.3d at 741 (allegations of consumer deception under similar Illinois law were adequately pled where the plaintiff "relie[d] entirely on the size of the boxes for her claims" even where "net weight and number of pieces inside the box" were printed on packaging). In short, plaintiff has adequately pled that a reasonable consumer was likely to be deceived at this stage, i.e., this is not one of the "rare situation[s] in which granting a motion to dismiss is appropriate."[8] Williams, 552 F.3d at 939.

---

presence of any nonfunctional slack-fill, let alone the 58% nonfunctional slack-fill" alleged within the Product's rigid cardboard box. (See Dkt. 22, FAC at ¶¶ 1 (Photo), 25).

[7] Although the FAC contains stray allegations that plaintiff "relied upon the opaque packaging, including the size of the box and product label," (Dkt. 22, FAC at ¶ 12), a holistic review of the complaint suggests that plaintiff's theory of deception is almost entirely premised on the size of the Product's box. (See id. at ¶¶ 20-29).

[8] Defendant contends that plaintiff's common-law claims fail "for the same reasons as her statutory consumer fraud claims." (See Dkt. 25, Motion at 20-21). However, given the court's determination that plaintiff has sufficiently pled her statutory claims, this contention fails.

III. RESTITUTION/EQUITABLE RELIEF.

Finally, based on the Ninth Circuit's recent decision in Sonner v. Premier Nutrition Corp., 971 F.3d 834 (9th Cir. 2020), defendant argues that plaintiff's claims for restitution and equitable relief should be dismissed because plaintiff has not established that she lacks an adequate remedy at law. (See Dkt. 25, Motion at 21-24).

In Sonner, the Ninth Circuit held that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." 971 F.3d at 844. Thus, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." Id. This is so "[r]egardless of whether California authorizes its courts to award equitable restitution under the UCL and CLRA when a plain, adequate, and complete remedy exists at law[.]" Id. at 845. Moreover, "[c]ases in this Circuit have held that Sonner extends to claims for injunctive relief." Huynh v. Quora, Inc., 2020 WL 7495097, *19 (N.D. Cal. 2020) (collecting cases).

Here, plaintiff has sufficiently alleged that she "lacks an adequate legal remedy[.]" Roper v. Big Heart Pet Brands, Inc., 2020 WL 7769819, *9 (E.D. Cal. 2020) (concluding that Sonner did not prevent plaintiff from "pursu[ing] her equitable claims for injunctive relief"). Plaintiff alleges that "injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unlawful marketing efforts" and to "prevent future purchasers from being misled[.]" (Dkt. 22, FAC at ¶ 113); (see also id. at ¶¶ 121, 137). Plaintiff also alleges that she "may be entitled to restitution under the UCL, while not entitled to damages under other causes of action" which may impose more stringent elements that plaintiff may ultimately not be able to prove. (See id. at ¶ 113). Thus, while "monetary damages may ultimately fully address plaintiff's harm, at this stage of the litigation there is an ongoing, prospective nature to plaintiff's allegations given her contention that she and other future purchasers will continue to be misled." Roper, 2020 WL 7769819, at *9 (internal quotation and alteration marks omitted). Finally, the court is persuaded that, viewed in the light most favorable to plaintiff, see Berg, 412 F.3d at 1125, her allegations sufficiently plead that "restitution

under the CLRA or UCL would be more certain, prompt, or efficient" than the monetary damages she seeks, but may ultimately not attain.[9] Anderson v. Apple Inc., 2020 WL 6710101, *7 (N.D. Cal. 2020); see also Am. Life Ins. Co. v. Stewart, 300 U.S. 203, 214, 57 S.Ct. 377, 380 (1937) ("A remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient."). In short, plaintiff has sufficiently established at this stage that she lacks an adequate remedy at law with respect to her claims for equitable relief.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss **(Document No. 25)** is **denied**.
2. Defendant shall file its Answer no later than **August 9, 2021**.

Dated this 26th day of July, 2021.

/s/

Fernando M. Olguin
United States District Judge

[9] "Additionally, unlike Sonner, Plaintiff[ is] not pursuing equitable remedies to the exclusion of a remedy at law." Stewart v. Kodiak Cakes, LLC, 2021 WL 1698695, *35 (S.D. Cal. 2021) (declining to dismiss equitable relief claims at the pleading stage where such claims were adequately pled in the alternative); Sagastume v. Psychemedics Corp., 2020 WL 8175597, *8 (C.D. Cal. 2020) (agreeing that "Sonner does not hold that plaintiffs may not seek alternative remedies at the pleading stage") (internal quotation marks omitted); (see Dkt. 27, Plaintiff's Opposition [ ] at 8) (contending that plaintiff has "pleaded alternative relief").